IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ORLANDO BAEZ,
      PLAINTIFF,
  Vs.

DR. BYUNGHAK JIN; DR. MIN HI PARK;
DR. PAUL DASCANI; DR. LAURENCE ALPERT
PA. ESTHER MATTES; PA. ELDON MWAURA;
DR. ROBERT VALLEY; RN. LOUIS KING;
RN RICK FRZAER; SGT. TERRY HAROUSE;
LT. SCOTT GEORGE; CO. ANGEL BROWN;
CO. ROBERT DERRY:

      DEFENDANTS.

CIVIL CASE NO#. 2:17-cv-01375 LPL

CIVIL ACTION - RETALIATION

JURY TRIAL DEMAND

**FILED**

APR -4 2018

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## THIRD AMENDED COMPLAINT

1.) Orlando Baez, (Plaintiff Hereafter), is an adult citizen of the Commonwealth of Pennsylvania, residing at 175 Progress Drive, Waynesburg, PA. 15370.

2.) Plaintiff is a prisoner at the State Correctional Facility at Greene, in Waynesburg, PA. 15370 and during all time relevant has been under the care, custody and control of the Pennsylvania Department of Corrections, and has been issued a prisoner identification number of (CB-3721#).

3.) Defendant Dr. Byunghak Jin; (Defendant Dr. Jin Hereafter), is a licensed professional, and is practicing in the speciality of Medical Doctor.

4.) Defendant Dr. Jin, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

5.) Defendant Dr. Min Hi Park; (Defendant Dr. Park Hereafter), is a licensed professional, and is practicing in the speciality of Medical Doctor.

6.) Defendant Dr. Park, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

7.) Defendant Dr. Paul Dascani; (Defendant Dr. Dascani Hereafter), is a licensed professional, and is practicing in the speciality of Medical Doctor.

8.) Defendant Dr. Dascani, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

9.) Defendant Dr. Laurence Albert; (Defendant Dr. Albert Hereafter), is a licensed professional, and is practicing in the speciality of Medical Doctor.

10.) Defendant Dr. Albert, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

11.) Defendant Esther Mattes, Physician Assistant; (Defendant PA. Mattes Hereafter), is a licensed professional, and is practicing in the speciality of Physician Assistant.

12.) Defendant PA. Mattes, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

13.) Defendant Eldon Mwaura, Physician Assistant; (Defendant PA. Mwaura Hereafter), is a licensed professional, and is practicing in the speciality of Physician Assistant.

14.) Defendant PA. Mwaura, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

15.) Defendant Dr. Robert Valley, (Defendant Dr. Valley Hereafter), is the Medical Director at SCI Greene.

16.) Defendant Dr. Valley, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

17.) Defendant Louis King, Registered Nurse; (Defendant RN King Hereafter), is a professional, and is practicing in the speciality of Registered Nurse.

18.) Defendant RN King, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

19.) Defendant Rick Frazer, Registered Nurse; (Defendant RN Frazer Hereafter), is a professional, and is practicing in the speciality of Registered Nurse.

20.) Defendant RN Frazer, maintains a practicing address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

21.) Defendant Lieutenant Scott George; (Defendant Lt. George Hereafter), is a Correction Officer.

22.) Defendant Lt. George, maintains an employment address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

23.) Defendant Sergeant Terry Harouse; (Defendant Sgt. Harouse Hereafter), is a Correction Officer.

24.) Defendant Sgt. Harouse, maintains an employment address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

25.) Defendant Angelo Brown; (Defendant CO. Brown Hereafter), is a Correction Officer.

26.) Defendant CO. Brown, maintains an employment address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

27.) Defendant Robert Derry; (Defendant CO. Derry Hereafter), is a Correction Officer.

28.) Defendant CO. Derry, maintains an employment address of 169 Progress Drive, Waynesburg (Greene County), PA. 15370.

29.) At all times material hereto, Defendants Dr. Jin, Dr. Park, Dr. Dascani, Dr. Alpert, PA. Mattes, PA. Mwaura, Dr. Valley, RN King, RN Frazer, Lt. George, Sgt. Harouse, CO. Brown and CO. Derry, acted as an agent, employee of the Department of Corrections.

30.) Plaintiff is pursuing a **retaliation** claim against these defendants.

31.) Plaintiff is pursuing a **retaliation** claim and/or a claim pursuant to the **First Amendment** against these defendants.

32.) At all times mentioned herein, Plaintiff was under the direct medical care of Defendants Dr. Jin, Dr. Park, Dr. Dascani, Dr. Alpert, Dr. Valley, PA. Mattes, PA. Mwaura, RN King and RN Frazer, through and by a contractual agreement between Defendants and the Department of Corrections, to provide medical services to prisoners, namely Plaintiff.

33.) At all times mentioned herein, Plaintiff was under the care, custody and control of Defendants Lt. George, Sgt. Harouse, CO. Brown, and CO. Derry through and by contractual agreement between the defendants and the Department of Corrections, to maintain care, custody and control of prisoners, namely Plaintiff.

34.) The acts of **retaliation conduct** referenced in the Complaint occurred in Greene County, Pennsylvania.

35.) This Court has jurisdiction over the Plaintiff's claims of violation of Federal Constitutional Rights under 28 U.S.C. §§1331 and 1343(A)(3) and §§1391(b)(2).

36.) The Plaintiff has exhausted his administrative remedies with respect to all claims and all defendants.

37.) March of 2014, Plaintiff began suffering a subcutaneous skin lupus and systemic lupus erythematous skin outbreaks.

38.) July 5, 2014, Defendant Dr. Dascani prescribed hydrocortisone cream, to treat Plaintiff's severe lupus skin outbreaks.

39.) July 13, 2014, Plaintiff through sick call complained that the hydrocortisone cream was ineffective for Plaintiff's type of severe lupus skin outbreaks.

40.) Dr. Park disregarded Plaintiff's complaint about the hydrocortisone cream not working and asked for betamethasone dipropionate cream, but Dr. Park prescribed more of the hydrocortisone cream.

41.) Plaintiff through sick call slips, sick call visits and the grievance system gave notice to Dr. Jin, Dr. Park, Dr. Dascani, Dr. Alpert, PA. Mattes, and PA. Mwaura, that the hydrocortisone cream was not helping, but causing additional skin damage.

42.) July 24, 2014, Dr. Park again disregarded Plaintiff's complaints, that the hydrocortisone cream still was not working. And again asked for for betamethasone dipropionate cream.

43.) July 27, 2014, articort cream was ordered for Plaintiff to use.

44.) Plaintiff continued to utilize the prison's sick call system, requesting for medical attention for his severe skin lupus outbreaks, that was getting worse and now also bleeding.

45.) August 20, 2014, Five (5) months after the onset of Plaintiff's severe skin lupus outbreaks, Dr. Jin stated that he would order the betamethasone dipropionate cream.

46.) Sept. 25, 2014, Plaintiff has yet to receive the betamethasone dipropionate cream. Plaintiff went on sick call to find out what happen to the cream.

47.) Dr. Park saw the Plaintiff for sick call and stated that he did not care about Plaintiff's complaints.

48.) Dr. Park also stated to stop filing anymore sick call slips, unless Plaintiff had any new complaints.

49.) Oct. 9, 2014, PA. Mattes informed Plaintiff, that her Supervisor had instructed her to limit Plaintiff's sick call complaints to only one (1) medical issue.

50.) Plaintiff has severe chronic skin condition, that are subcutaneous skin lupus and systemic lupus erythematous.

51.) These conditions went untreated by defendants Dr. Jin, Dr. Park, Dr. Dascani, Dr. Alpert, PA. Mattes, PA. Mwaura, because they were not considered new complaints.

52.) This was done **in retaliation** because Plaintiff has filed grievances and lawsuits against the SCI Greene medical department and defendant.

53.) Nov. 7, 2014, Plaintiff attempted to seek treatment for has various symptoms and injuries, due to Plaintiff's subcutaneous skin lupus and systemic lupus erythematous conditions.

54.) PA. Mattes again limited Plaintiff to only one (1) medical issue.

55.) This limitation prevented Plaintiff from receiving treatment in a timely manner for Plaintiff's worsening conditions.

56.) Nov. 21, 2014, Dr. Dascani informed Plaintiff, that he would not provide Plaintiff with treatment, because Plaintiff was suing defendant Dr. Dascani and other medical staff at SCI Greene.

57.) Plaintiff filed at least (9) nine grievances from Oct. 23, 2014 through Jan. of 2015, seeking relief from the defendants refusal to treat Plaintiff's injuries.

58.) Jan 1, 2015, PA Mattes refuse to provide any treatment for Plaintiff's outbreaks and injuries.

59.) Jan 23, 2015, Dr. Park refuse to provide any treatment for Plaintiff's outbreaks and injuries.

60.) Jan 27, 2015, Dr. Jin refer Plaintiff to a Urologist Specialist.

61.) Feb 12, 2015, Plaintiff has his first consult with Dr. Chaudry.

62.) Dr. Chaudry, informed Plaintiff that his only option to alleviate the damaged skin condition affecting his foreskin, was to undergo a circumcision.

63.) Plaintiff states it was against his religious belief, but was forced to be circumcised.

64.) Mar 11, 2015, Dr. Chaudry performed a circumcision on Plaintiff and closed the incision with stitches.

65.) Mar 12, 2015, Plaintiff stitches began to come apart.

66.) Mar 15, 2015, Plaintiff had all but two (2) stitches come apart, and opened a wound on Plaintiff's penis causing excruciating pain and serious bleeding.

67.) Mar 15, 2015, Plaintiff was seen by Dr. Jin, about being re-stitched, which Dr. Jin refused to have done.

68.) Mar 16, 2015, Plaintiff submitted a sick call slip about being re-stitched, and pain caused by Plaintiff's stitches having come apart.

69.) Mar 19, 2015, Plaintiff submitted a sick call slip about being re-stitched, and pain caused by Plaintiff's stitches having come apart.

70.) Mar 20, 2015, Dr. Jin saw Plaintiff and examined Plaintiff's open wound, which was bleeding profusely.

71.) Dr. Jin gave Plaintiff medical tape and told Plaintiff to tape his wound closed and don't worry about it.

72.) Mar 26, 2015, Plaintiff return to see Dr. Chaudry, for a follow up visit.

73.) During the visit on Mar 26, 2015, Dr. Chaudry informed Plaintiff, that Dr. Jin had waited too long in order to be re-stitched.

74.) As a direct result the open wound had to heal on its own, which would take approximately (3) three weeks.

75.) Mar 31, 2015, Plaintiff submitted a sick call slip, seeking treatment for the open wound at the site of his incision, to no avail.

76.) Apr. 3, 2015, Dr. Jin saw Plaintiff but refused to examine Plaintiff's open wound.

77.) Apr. 9, 2015, Plaintiff submitted a sick call slip, seeking treatment for the open wound at the site of his incision, to no avail.

78.) Apr 17, 2015, PA Mattes saw Plaintiff but refused to examine Plaintiff's open wound.

79.) Apr 23, 2015, Plaintiff submitted a sick call slip, seeking treatment for the open wound at the site of his incision, to no avail.

80.) Apr 29, 2015, Plaintiff was sent on a scheduled consult with Dr. Chaudry.

81.) Dr. Chaudry examined Plaintiff's open wound, and informed Plaintiff, that Plaintiff's open wound was not going to heal on its own. And that Plaintiff would be scheduled to be re-stitched at a later time.

82.) SCI Greene staff gave Plaintiff, only medical gauzes and tape to bandage Plaintiff's open wound.

83.) May 21, 2015, Plaintiff had his open wound re-stitched.

84.) Plaintiff was never given an explanation for the long delay, to be re-stitched.

85.) Plaintiff believe this was in **retaliation** to grievances and lawsuits filed against SCI Greene medical department, etc.

86.) As a direct result of the long delays of medical treatment, Plaintiff's aliments continued to worsen and causing severe pain, and damage to Plaintiff's skin, (back, buttock, penis and anal), causing rectal bleeding.

87.) May 21, 2015, Plaintiff saw Dr. Jin, and Dr. Jin told Plaintiff what meds he was giving Plaintiff.

88.) May 25, 2015, Dr. Jin discontinued Plaintiff's pain meds.

89.) May 26, 2015, Plaintiff submitted a sick call slip to Dr. Jin, requesting an extension of Plaintiff's pain meds.

90.) May 27, 2015, PA. Mattes saw Plaintiff in the triage room, to tell Plaintiff that Dr. Jin will extend Plaintiff's pain meds.

91.) PA. Mattes never checked Plaintiff's stitches, which showed signs of an infection and bleeding, at the site of Plaintiff's stitches.

92.) May 29, 2015, Dr. Jin saw Plaintiff in the triage room, to examine Plaintiff's wound.

93.) Plaintiff informed Dr. Jin, that Plaintiff is still in severe pain and still needs to use the bandages to cover and prevent his wound from bleeding.

94.) Jun 3, 2015, Plaintiff submitted (2) sick call slips, for all his ongoing medical conditions, and his ongoing skin outbreaks which is worsening, and spreading badly and bleeding from his stitches again.

95.) Jun 4, 2015, PA Mattes saw Plaintiff in the triage room, for Plaintiff's lupus injection.

96.) PA. Musura, refused to address any of Plaintiff's medical complaints, including Plaintiff's requests to examine Plaintiff's stitches.

97.) Jun 4, 2015, Plaintiff experience a sharp pain to the site of his surgical incision, and notice drops of blood on the floor, his boxers, and his socks.

98.) Three (3) more stitches had come apart, to leave an open wound again.

99.) Jun 6, 2015, Plaintiff reported his injury to RN King, who instructed Plaintiff to submit a sick call slip.

100.) Jun 7, 2015, Plaintiff submitted a sick call slip, relating to his injuries and for his ongoing untreated medical complaints.

101.) Jun 8, 2015, PA Mattes saw Plaintiff at his cell door, and stated that she cannot pull Plaintiff out from his cell, to examine Plaintiff, due to the prison being locked-down.

102.) As a direct result of denial of medical treatment, Plaintiff suffered excruciating pain due to the stitches coming apart and exposing his flesh and bleeding again, causing throbbing and pounding pain all day and all night.

103.) As a direct result of denial of medical treatment, Plaintiff also notice his subcutaneous skin lupus outbreaks had worsen and spreading out of control.

104.) Jun 9, 2015, Plaintiff submitted a sick call slip for all of his ongoing medical conditions, including his skin lupus outbreaks, pain and his open wound.

105.) Jun 10, 2015, Dr. Jin saw Plaintiff in the triage room, and again refuse to examine Plaintiff's open wound.

106.) Jun 12, 2015, RN King gave Plaintiff skin cream ordered by Dr. Jin.

107.) Jun 18, 2015, Plaintiff submitted a sick call slip regarding his open wound, and his serious pain from his skin lupus outbreak.

108.) Jun 19, 2015, PA. Mwaura saw Plaintiff at his cell door and refused to examine Plaintiff's open wound, and give medical treatment.

109.) Jul 7, 2015, Plaintiff filed a grievance against PA. Mwaura.

110.) Jul 9, 2015, Plaintiff submitted a sick call slip regarding his open wound, and his serious pain from his skin lupus outbreaks.

111.) Jul 10, 2015, PA Mwaura saw Plaintiff at his cell door, and refuse to examine and treat Plaintiff's medical conditions, because Plaintiff had filed a grievance against her.

112.) PA Mwaura, walked away from Plaintiff without treating Plaintiff in **retaliation** for Plaintiff filing a grievance against her.

113.) Jul 19, 2015, Plaintiff submitted (6) six sick call slips, (One for each medical issue), regarding his open wound and skin lupus outbreak, etc.

114.) Jul 20, 2015, PA Mwaura saw Plaintiff at his cell door and stated, that she will not address all (6) six sick call slips, because there is too many slips and walked away without examining or treating Plaintiff.

115.) Jul 22, 2015, Plaintiff was transported to see Dr. Chaudry.

116.) Dr. Cohen examined Plaintiff and notice that Plaintiff's wound was not fully healed.

117.) A half inch (½) open wound of raw sensitive flesh remained open, and painful to the touch.

118.) Dr. Cohen, asked Plaintiff, if he could take a few photos of the open wound.

119.) Plaintiff permitted Dr. Cohen, to take pictures.

120.) Plaintiff also informed Dr. Cohen, that Plaintiff is experiencing serious problems holding his urine, weak stream and spraying all over. A problem Plaintiff never had before the (2) two surgeries.

121.) Jul 30, 2015, Plaintiff tried to submit (6) six sick call slips, but the nurse refuse to accept them.

122.) Aug 13, 2015, Plaintiff submitted sick call slip regarding his open wound, and his other medical problems.

123.) Aug 14, 2015, PA Beabout, saw Plaintiff in the triage room and refuse to examine Plaintiff's open wound, or address any of his ongoing medical complaints.

124.) Aug 25, 2015, Plaintiff submitted (2) two sick call slips, regarding his open wound and his other medical problems.

125.) Aug 27, 2015, PA Mwaura, saw Plaintiff in the triage room, where PA Mwaura only examined the swelling and infection to the left side of Plaintiff's (head, face, jaw, neck, throat and ear), and none of Plaintiff's other medical problems.

126.) Sep 3, 2015, Plaintiff submitted (2) two sick call slips, regarding his open wound, and other serious medical conditions.

127.) Sep 4, 2015, PA Beabout saw Plaintiff at his cell door to inform Plaintiff, that Dr. Jin will see Plaintiff tomorrow.

128.) Sep 5, 2015, Plaintiff was not seen by Dr. Jin or anyone else.

129.) Sep 9, 2015, Plaintiff submitted (2) two sick call slips, regarding his open wound and other serious medical conditions.

130.) Sep 10, 2015, PA Mwaura, saw Plaintiff in the traige room, to give Plaintiff his lupus injection and stated that she is not there to examine Plaintiff's open wound, or to address his other medical conditions.

131.) Oct 7, 2015, Dr. Jin saw Plaintiff in the triage room, to inform Plaintiff that he has a lupus follow up visit soon, and Plaintiff can discuss his complaint then.

132.) Nov 23, 2015, PA Mwaura saw Plaintiff, at his cell door and informed Plaintiff that he will see Dr. Alpert tomorrow.

133.) May 27, 2016, RN Walters, delivered meds to Plaintiff and informed Plaintiff, that PA. Mwaura has order a new medicine called (Risedronate).

134.) RN Walters gave Plaintiff a small packet, which contained (1) one small blue pill, plus a pamphlet with extremely tiny fine printing.

135.) Which was impossible for Plaintiff to read, because of his severe chronic vision problems.

136.) Plaintiff asked RN Walters to read it for him, since it was the instructions and warnings guide.

137.) RN Walters, stated I am not going to read all that to you, I have no time to read all that to you.

138.) May 29, 2016, Plaintiff noticed some strange sensations to his body.

139.) Jun 2, 2016, Plaintiff began to experience more serious changes to his health and body.

140.) The problems Plaintiff is having are chronic dry throat, scratchy throat, dry burning sensations in his throat, difficulty breathing with shortness of breath, uncontrollable chronic dry cough, stomach pains, and swelling to his neck, throat, tongue and gums, etc.

141.) Deep dark purple spots covering his entire back, and massive blisters and rashes outbreaks.

142.) Jun 2, 2016, Plaintiff's condition worsen to the point, that Plaintiff was unable to get out of bed, or able to speak.

143.) Jun 2, 2016, PA Mwaura saw Plaintiff in the triage room, to administered Plaintiff's lupus injection.

144.) PA Mwaura, refused to provide any answers or do any thing about Plaintiff's medical conditions.

145.) Jun 8, 2016, PA. Libetore, saw Plaintiff at his cell door, and he showed PA. Libetore his back and complained of experiencing a deep sharp piercing pain to the right side of Plaintiff's rib cage, among the other side effects, etc.

146.) Plaintiff's back was covered with painful blisters, rashes, and dark black, red, and purple blood spots.

147.) PA. Libetore, ordered an x-ray to see if Plaintiff had any broken ribs.

148.) PA Libetore, told Plaintiff, that she reviewed the x-rays and she did not see any signs or indications of any internal injuries, or any broken, or fractured ribs.

149.) Jun 17, 2016, Dr. Santos saw Plaintiff in the triage room for sick call.

150.) Dr. Santos stated that, he had seen the x-rays taken a few days ago, and it showed no broken or fractured ribs, etc.

151.) Jun 21, 2016, Plaintiff was taken to the triage room, for x-rays.

152.) Dr. Santos stated, the x-rays showed nothing is broken or fractured, or any internal injuries, you will be fine.

153.) Jul 7, 2016, Dr. Valley, saw Plaintiff in the triage room. Where Dr. Valley stated that, the x-rays does not show any kind of abnormalities, internal injuries or internal problems, that there is nothing wrong with Plaintiff.

154.) Dec 1, 2016, Plaintiff was escorted to the infirmary, by Sgt. Jenkins and CO. Brant.

155.) Plaintiff was then shackled, put in a van and transported to the Southwest Medical Regional Center Hospital Emergency Room.

156.) Plaintiff was examined and evaluated by the doctors there, and it was determined that something on the right side of Plaintiff's rib cage and lung was developing, etc.

157.) The doctors at the Southwest Medical Regional Center Hospital's Emergency Room, called the Washington Health System Hospital for the Lung Specialists opinion.

158.) It was determined, that it would be best to have Plaintiff transported to Washington Hospital immediately.

159.) Plaintiff was admitted at Washington Hospital for (5) five days. Where it was discovered that the cause of Plaintiff's medical conditions was a direct result of (2) two fractured ribs, lung complications, swelling over the right side of Plaintiff's rib cage, and a large mass in the right lung, causing internal pain, difficulty breathing, and chronic dry coughing.

160.) Plaintiff was given effective treatment at Washington Hospital.

161.) Plaintiff continues to suffer from internal pain, due to the fact, that Plaintiff's (2) two fractured ribs, did not heal properly due to the direct results of Dr. Jin, Dr. Park, Dr. Dascani, Dr. Albert, Dr. Valley, PA. Mattes, PA. Mwaura, inaction.

162.) Plaintiff's lung complications has not improved at all since Plaintiff's last visit, to the lung specialist to date, but got worse.

163.) It is believed and therefore averred, that the failure to provide adequate medical treatment upon repeated requests, is **retaliatory** in nature and specifically due to Plaintiff's filing grievances and lawsuits, against SCI Greene medical department, etc.

164.) Nov 17, 2016, RN King, exchanged Plaintiff's catheter, that was previously inserted the day before incorrectly.

165.) Plaintiff assisted RN King, to carefully remove the tube.

166.) There was no problems, bleeding or pain during the removal of the tube.

167.) RN King, then injected saline fluid directly into Plaintiff's penis, causing excruciating internal pain to which Plaintiff asked RN King to stop.

168.) RN King, assured Plaintiff, that Plaintiff will be okay, that this is to clean out anything inside your penis, that was left behind from the removal.

169.) RN King, continued to inject more and more saline fluid directly into Plaintiff's penis, causing excruciating internal pain, to which again Plaintiff asked RN King to stop, at that time RN King stopped.

170.) RN King, again assured Plaintiff, that this was normal, there's nothing to worry about, and that the bleeding will stop within a short while, once the Plaintiff urinate.

171.) RN King, inserted the new catheter into Plaintiff's penis, where he began to inject saline fluid into the new balloon, while the bleeding continued to pour out of the Plaintiff's penis onto the table, clothes and floor,

172.) Plaintiff immediately informed RN King, that he is having excruciating internal pain and that Plaintiff can feel that something was wrong internally.

173.) Plaintiff was sent back to his cell with the new catheter and was still dripping blood into the bag the entire time, instead of urine.

174.) About 2:15pm that same day, Plaintiff saw CO. Brown walking by his cell door, and Plaintiff immediately informed CO. Brown, that he needed to call medical to have someone come and check Plaintiff's catheter, because of the excruciating

internal pain and blood filling up his bag.

175.) CO. Brown, claims that he informed Sgt. Harouse of Plaintiff's complaints, and return to tell Plaintiff, Medical will be coming soon within 10 or 15 minutes.

176.) Every 10 to 15 minutes, Plaintiff kept informing CO. Brown, that he needs medical help now, and CO. Brown stated that medical was called, they'll be here in about 15 more minutes.

177.) Plaintiff made numerous requests to CO. Brown, that Plaintiff wants to speak with the Lieutenant and Shift Commander in charge immediately.

178.) Plaintiff began to beg Sgt. Harouse and CO. Brown, to please have Plaintiff taken down to the infirmary, if medical refuses to come to see Plaintiff.

179.) Plaintiff, showed Sgt. Harouse several times the blood in the bag and the tube inserted into his penis, which was causing Plaintiff excruciating internal pain.

180.) Plaintiff also asked CO. Derry, if he could help Plaintiff and stated what the problem was, and requested to be taken to the infirmary several times.

181.) CO Derry had informed Plaintiff, that medical had told Sgt. Harouse and him, that Plaintiff's medical problems was (not an medical emergency matter), and that Lt. George was notify around 2:30pm.

182.) About 8:10pm, Lt George, came to Plaintiff's cell door, and told Plaintiff that he was too busy to come out, and talk to Plaintiff.

183.) at 8:29pm, RN Frazer, came to Plaintiff cell door, and wanted Plaintiff to (first sign a medical waiver form of liability), or else RN Frazer will not remove the catheter or examine Plaintiff.

184.) Plaintiff then told RN Frazer, that Plaintiff will not sign any waiver form, etc.

185.) At 8:40pm, Plaintiff was escorted to the triage room, with RN Frazer.

186.) RN Frazer, then began to slowly remove the catheter from Plaintiff's penis,

and the very second that the catheter was completely removed. Massive dark blood sprayed/shot out of Plaintiff's injured pains. The blood now sprayed out all over the entire room, over Plaintiff's clothing, examination table, all over the floor, all over RN Frazer's uniform, all over the curtain divider and cabinets, etc.

187.) RN Frazer, was unable to stop or control the serious blood from spraying out from Plaintiff's penis.

188.) RN Frazer, had to use massive of medical gauzes which did not help, towels were also used and did not help, nothing was helping to stop the massive flow of blood being loss.

189.) Plaintiff then heard RN Frazer, ordering a guard to empty one of the medical jars on the cabinet counter.

190.) Plaintiff heard RN Frazer informing Lt. George, that RN Frazer needs to call this in to medical, and requests for the (EMS) to come down and have Mr. Baez transported to the Emergency Room immediately.

191.) The EMS arrived and Plaintiff was shackled and chained to the stretcher and then transported to Southwest Regional Medical Center Hospital's Emergency Room.

192.) Plaintiff was left in his cell bleeding from his penis and hemorrhaging internally from 11:00am to 8:40pm.

193.) At the Hospital the Plaintiff was put on a IV., fluid machine, heart monitor and had blood pressure taken, blood samples taken, and urine samples taken.

194.) Plaintiff was also given medication for possible infections and other medication for his pain.

195.) Dr. Robinson, then stated to Plaintiff, that the cause of Plaintiff's pain and internal bleeding, was caused as a direct result of (2) two catheters inserted incorrectly, which also caused internal hemorrhaging and trauma.

## COUNT ONE

## ORLANDO BAEZ Vs. ALL DEFENDANTS

196.) Plaintiff, Orlando Baez, incorporates paragraphs (1) through (195) and sets forth the same in at length.

197.) As a direct and proximate results of the defendant's **retaliatory conduct**, as set forth elsewhere in this complaint, Plaintiff has suffered the following injuries, some of which are permanent:

1.) A permanent fear that the medical department will make Plaintiff wait for ser-vices, when needed;

2.) Pain and suffering from the (2) two catheters that were inserted incorrectly;

3.) Pain and suffering from the bleeding and the internal hemorrhaging;

4.) Pain and suffering from the (2) two fractured ribs and lung complications;

5.) As a further direct and proximate results of the Defendant's **retaliation**, as set forth elsewhere in this complaint, Plaintiff has suffered and will continue to suffer for an indefinite time into the future, a disruption of Plaintiff's ability to heal properly, Plaintiff's desire to seek out medical treatment due to mental and emotional distress as caused by the Defendants actions/inaction, omissions, and **retaliation**.

WHEREFORE: **Plaintiff Orlando Baez, demands damages against all the Defendants in the amount of $250,000.00 dollars, both jointly and severally, including interests, pre-judgment delay, court costs, cost of litigation, and attorney fees, etc.**

## VERIFICATION DECLARATION

I, Orlando Baez, Plaintiff; have read the foregoing document and hereby verify that the matters alleged therein are true, except as to those matters alleged on information and belief, and, as to those, I believe to be true. I certify under the penalty of perjury, that the foregoing is true and correct pursuant to 28 U.S.C. § 1746 and 18 Pa. C.S.A. §4904.

Date: 3/26/18

cc; on file,

Respectfully Submitted:

_____
Plaintiff
Mr. Orlando Baez, ID# CB/3721
175 Progress Drive
Waynesburg, Pa. 15370

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ORLANDO BAEZ,                              :       CASE NO#. 2:17-cv-01375 LPL
      PLAINTIFF,
                                           :
  Vs.                                      :       Civil Action - Retaliation

DR. BYUNGHAK JIN; DR. MIN HI PARK;         :
DR. PAUL DASCANI; DR. LAURENCE ALPERT :     Jury Trial Demand
PA. ESTHER MATTES; PA. ELDON MWAURA;
DR. ROBERT VALLEY; RN LOUIS KING; RN       :
RICK FRZAER; SGT. TERRY HARDUSE; LT.
SCOTT GEORGE; CO. ANGELO BROWN;            :
CO. ROBERT DERRY:
                                           :
      DEFENDANTS.

## CERTIFICATE OF SERVICE

   I, Orlando Baez, Plaintiff, hereby certify that I am on this day serving a true and correct copy of (PLAINTIFF THIRD AMENDED COMPLAINT), of the following foregoing document to the individuals and in the manner as indicated below which satisfies the service of Pa. R.C.P.

SERVICE BY FIRST CLASS MAIL
ADDRESSED AS FOLLOWS TO:

1.) Clerk Of Court Office
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
U.S. POSTOFFICE & COURTHOUSE
7th AVE & GRANT STREET,
PITT, PA. 15219

2.) Maria G. Macus, Assist Counsel;
DOC OFFICE OF CHIEF COUNSEL
1920 TECHNOLOGY PARKWAY
MECHANICSBURG, PA. 17050

3.) Alan S. Gold, Esq:
Gold & Ferrante
The Pavillion
261 Old York Road, Suite-526#
Jenkinstown, Pa. 19046

4.) Mr. Samuel Angell, Esq:
Criminal Attorney Office

cc: on file

Respectfully Submitted:

_/s/ Orlando Baez_
Plaintiff
Mr. Orlando Baez, ID# CB/3721
175 Progress Drive
Waynesburg, Pa. 15370

Date: 3/26/18