IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT PENNSYLVANIA

ORLANDO BAEZ,                          :        CASE NO#. 2:17-CV-01375
            Plaintiff,                 :
      Vs.                              :
                                       :        CIVIL ACTION
BYUNGHAK JIN, ET AL.,                  :
                                       :        RETALIATION
            Defendants.                :
                                       :        JURY TRIAL DEMAND  **FILED**

**PLAINTIFF'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION OF
MAGISTRATE JUDGE LISA P. LENIHAN**

FEB 24 2020

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

NOW COME: Plaintiff, Orlando Baez, pro se'; herby files this Motion Of Objections To The Report And Recommendations Of The Magistrate Judge Lisa Pupo Lenihan, and states the following in support thereof:

I.    Plaintiff, hereby submits the following objections pursuant to all Claims Raised against Defendants; Byunghak Jin, MD; Min Hi Park, MD; Paul Dascani, MD; Laurence Alpert, MD; Esther Mattes, PA; Eldon Mwaura, PA; Robert Valley, MD; Rick Frazer, RN; Terry Harouse, SGT; Scott George, LT; CO. Angel Brown; CO. Robert Derry; Louis King, LPN; John/Jane Doe(s); et al.. And In Opposition to the Magistrate Determinations and/or Order Granting Summary Judgment in the favor of the Defendants [Doc. 152].

II.   Plaintiff brings this civil rights action pursuant to 42 U.S.C. §1983, alleging that (all) Defendants retaliated against him for seeking effective medical care, including, but not limited to, for utilizing the (DOC) Prison's Grievance System, Medical Sick Call System and Lawsuits, etc.

**A.)**   FACTS

The following facts are objected and disputed, and are taken from the parties' Concise Statements of Material Facts, Response thereto, and Any Accompanying Appendices.

**1.**   <u>DEFENDANTS CO. ANGEL BROWN, CO. ROBERT DERRY, RN. RICK FRAZER,</u>
<u>LT. SCOTT GEORGE, SGT. TERRY HAROUSE, & RN. LOUIS KING</u>
<u>("COLLECTIVELY CORRECTIONS DEFENDANTS")</u>

Plaintiff, Orlando Baez, is an inmate currently incarcerated within the Pennsylvania Department of Corrections (DOC), at the State Correctional Facility at SCI Phoenix Prison (SCI-PHOENIX). Plaintiff objects to the Court's Rational and/or Applications of the Law she based its Opinions, in regards to the related events, incidents and the (only) Grievance No. 653087 of Nov. 21, 2016, when <u>numerous</u> of other Grievance(s) were filed in relation(s) to these ongoing related incidents, provided by Judge Lenihan and Defendants believed through Ex-Parte Communications, to deliberately denied and deprive this Plaintiff from filing an effective Objections/Appeal to this Honorable District Court. And the facts of this Miscarriage of Justice events are as follows:

Plaintiff agrees with the Court, that on 11/17/16, about 11:00am, LPN King and RN Tate saw Mr. Baez, in the triage room, to remove the old catheter, and to replace it with a new one. Plaintiff objects and disputes the Court's **intent** to obfuscate her version regarding RN Tate role, stating: "That **they** took out the old catheter". The Court's is obfuscating RN Tate's role in this event, is totally false. For the fact that RN Tate, "did not assist" LPN King, in the **removal** of the old catheter. For RN Tate was "STANDING AT ALL TIMES BEHIND THE CURTAIN DIVIDER AND THE DOORWAY OF THE TRIAGE ROOM". See [Doc. 117 at ¶20]. The

security surveillance camera recording, will support Plaintiff's claims, that RN Tate stayed at the doorway, while LPN King inserted the new catheter. See Corrections Defendants' Brief In Support of Motion For Summary Judgment Part A-2 Exhibit Grievance No. 653087, First Level Appeal To Superintendent, requesting The Surveillance Recording be Preserved for the Court's Review. Where it clearly states: "While in the triage room King deflated the balloon, while I assisted him to carefully remove the tube".

The Court continues to believe the defendants' false claims by stating: LPN King maintains that he did not shoot saline directly into the penis as you claim, and that King stated that this is the numbing agent used to alleviate some of the pain associated with the pain. Plaintiff disagrees with the Court's and RN Tate's progress note. And for the record; RN Tate will say anything to cover-up LPN King's incompetence, due to the fact, that she is King's girlfriend, and her notes should be taken with a grain of salt, and bias. And for the record; Plaintiff, never received a (copy of LPN King's Progress Notes) of this event/incident. Plaintiff disagrees with the Court's and RN Tate' notes and false assertions of the event. For Mr. Baez, claims that he was alert and fully aware of what happened to him and every word LPN King told Mr. Baez, that he used a syringe with a rubber tip, in order to inject the saline solution into the penis to clean out any infection and debris left from the removal of the old catheter. King then continued to inject more and more saline into Mr. Baez' penis, and after Mr. Baez pleaded and begged King to stop shooting saline into his penis, blood began to run-out causing excruciating pain.

The Court again accepted RN Tate' notes and version, over the Plaintiff version of this painful events. However; the Court failed to recognized, that, RN Tate was (behind the curtain divider at all times), and did not witnessed, whether her boyfriend King, injected saline or not since she did not see. This is

3

a genuine issue of material fact in dispute. A dispute which a jury may return a verdict in Mr. Baez' favor.   LPN King, allegedly claims that he filled the balloon with 30cc of normal saline solution, and that (He) not RN Tate, **noted** a small amount of blood returning which allegedly cleared up almost immediately, with clear yellow urine. It is noted that at this time, Mr. Baez allegedly verbalized that the pressure was relieved and pain lessened. The Court is displaying bias/and partiality, when (she) Judge Lenihan, disregarded Mr. Baez' Grievance and Version of this painful events. Plaintiff respectfully directs this Honorable District Court's attention to the very same Grievance No. 653087, the (only) grievance provided by Judge Lenihan/Defendants through discovery. Which Judge Lenihan used to protect the defendants and the DOC from liability. And which clearly contradicts both Judge Lenihan' and LPN King', and RN Tate' versions. See page-2# of grievance no. 653087, where it clearly states by Mr. Baez; "I again told King, "something is **not right,** I'm having excruciating pain to my stomach, penis and underneath my groin area". King again assured Mr. Baez, that "you will have that kind of feeling because the balloon is now full with (sic) 20cc of saline, but the pain won't be as bad". Mr. Baez noticed that the bleeding never once stopped, it just kept on dripping into the urine bag. And Plaintiff was sent back to his cell with a new catheter and blood dripping into the bag the entire time. See (Doc. 34 at ¶¶169-173) in support. There is not a single word in Mr. Baez' grievance, that states nor indicates that, Mr. Baez ever "verbalized" pressure relieved and pain lessened. This is clearly only the defendants' alleged version after plaintiff filed said grievance. And it also looks like Judge Lenihan is acting as an advocate for the Defendants and the DOC, or as their legal representative. And at the same time disregarded everything Mr. Baez stated in his grievance and response to the defendant' motion for summary judgment. These are clear disputed versions of the events, which creates a genuine issue of material facts in dispute.

The Court continues to be totally bias and partial, when it based its decision solely upon the defendants versions of the events, when the Court stated; "Based on the provided information, Dr. Valley decided that the catheter would be staying in and it was bothersome because it was a new insertion". Plaintiff asks this District Court, "what about the information provided by Mr. Baez, it means nothing, and does this means, that anything the defendants/DOC claims is only the truth, and the prisoners, because he is a capital case prisoner, must be untruthful ? Plaintiff has no way of knowing or verifying this information, since Judge Lenihan and the DOC engaged in Ex-parte Communication to deliberately denied Mr. Baez, of the repeated requests for discovery of all medical records, files, progress notes, handwritten notes, reports, outside specialists reports, e-mails, fax, data, memo's, letters to and from, telephone conversations between this party and that party, messages, **incident(s) report(s)** by all defendant(s) on Nov. 16 and Nov. 17, 2016, and/or any other late entries incident reports, by any medical personnels, and state officials relating to this incident/events, **all grievances** between the time frame of Mar. 2014 to May 21, 2019, filed by Plaintiff, all surgery reports, etc. The Court's bias and partiality deprived Mr. Baez of all the above discovery and some, to effectively respond to this Court' unfair, bias, partial Report & Recommendations. Judge Lenihan is fully aware that She/Defendants denied Mr. Baez of his rights to discovery and repeated motions to compel, including Mr. Baez' complaints against the defendants of extremely late filings in violation of the F.R.C.P. Judge Lenihan also abused its discretion when she denied Mr. Baez' Motion To Strike defendants' motion for summary judgment for failing to raise/or file in a timely manner according to the Law, their Statement of Uncontested Facts In Dispute, which was suppose to be filed with their motion for summary judgment on 5/6/19 [Doc. 116], and failed to do so, and in failing to do so, simply **"waived"** their right to file it later. Also see

[Doc. 135] in support of this claim and the Court' continuance abuse of discretion/bias toward this prisoner, as direct result of his capital case status. The repeated denial of the needed discovery to file an effective response to summary judgment was a clear abuse of a miscarriage of justice by Judge Lenihan, and in support see [Doc. 67, 84, 85, 86, 87, 91, 94, 95, 97, 98, 101, 135]. Every attempt and requests for discovery was deliberately ignored by Judge Lenihan/defendants.

According to the Court's and defendants' version of the events on Nov. 17, 2016, that only (2) calls were made by the DOC defendants to medical, either by Sgt. Harouse, CO. Derry, CO. Brown and/or Lt. George, in relations to Mr. Baez' Emergency Medical needs; Call 1.) on or about 1540 hrs., and Call 2.) on or about 1940 hrs. to medical department. However; the Court deliberately disregarded Plaintiff's events, when Mr. Baez personally spoke with the following DOC defendants first CO. Brown, second Sgt. Harouse and third CO. Derry, on numerous occasion(s) for (6) long excruciating hours pleading and begging for medical attention for anyone to help. For the record, Plaintiff is **unable** to produce the other grievance(s) Mr. Baez did filed against CO. Brown on 11/18/16, Grievance no. 653082, which Judge Lenihan and the DOC engaged in Ex-parte to deliberately deprived Mr. Baez, of access to said grievance against CO. Brown, in order to "prove retaliation" on this defendant' part on the night in question. Then there is **another** grievance Mr. Baez filed timely against Sgt. Harouse and CO. Derry on or about 11/25/16, Grievance No. 653684, Judge Lenihan and the DOC engaged in Ex-parte Communications to again deprive Mr. Baez' constitutional rights to filed an effective summary judgment response and established a genuine issue of material fact in dispute for retaliation against these (3) DOC Defendants. The (3) grievances demonstrates and exposes the defendants behaviors and conduct, and

acts/omissions of retaliation against Mr. Baez, for exercising his First Amendment Rights. It also exposes (how many times) Mr. Baez called and spoke with each defendant crying out for medical attention, to a Emergency Medical situation and need. And for the record; "PLEASE BE STRONGLY ADVISED THAT, THIS DOES NOT INCLUDES THE DEFENDANTS' INCIDENT REPORTS, INCLUDING LT. GEORGE, THE SHIFT COMMANDER JOHN/JANE DOE(S) AND DR. VALLEY, ETC." The Court continues Ex-parte Communications not only to denied and deprive Mr. Baez of an effective Summary Judgment Response, to establish numerous genuine issues of a material fact in dispute, but they join heads in to retaliate against this prisoner because of his capital status, and because they **can get away with their abuse against a death row inmate.**

The DOC Attorneys denied grievance(s) they knew were in their possession, the attorneys and Judge Lenihan also knew, that, the deprived discovery documentations also exposes the DOC defendants' refusal to help, how they mocked, ridiculed, laughed, joked and even (THREATENED MR. BAEZ, TO ISSUE HIM A MISCONDUCT, IF HE UTILIZES THE EMERGENCY RESPONSE CALL BUTTON IN HIS CELL AGAIN). It also exposes the defendants Sgt. Harouse and CO. Derry, **(SHUT OFF THE EMERGENCY RESPONSE CALL BUTTON IN MR. BAEZ' CELL, TO SILENCE HIM AND PREVENTING HIM FROM REQUESTING FOR MEDICAL ATTENTION, AND IT ALSO EXPOSES SOME VERBAL ABUSE BY CO. BROWN),** etc. These are all perfect evidence/grievances which establishes a genuine issue of material fact in dispute, and a jury verdict in Mr. Baez' favor, and maybe relief. In support of Mr. Baez' claims of the above events. Plaintiff's has attached (3) three Sworn Affidavit(s) by inmates who either, over heard what occurred on 11/17/16 and they are as follows: 1.) Mr. Orlando Maisonet, ID# (BW-0159), as Exhibit-(Maisonet); 2.) Mr. George Ivan Lopez, ID# (CZ-3198), Exhibit-(Lopez), and 3.) Mr. Michael E. Ballard, ID# (KB-5815) as Exhibit-(Ballard). It is crystal clear "why" the DOC did not provide Mr. Baez with the **missing**

grievances through discovery, among other missing documents, are grievances filed against Dr. Valley based on retaliation against Mr. Baez, for complaining and grievances filed against him, including several other grievances Mr. Baez filed against LPN King and his girlfriend RN Tate, for trying to kill Mr. Baez with the wrong medication. This grievance and incident will also demonstrates Kings and Tate' bias and also their pattern of their incompetence, and encounters when it comes to this Plaintiff. The missing grievances filed against King and Tate in that incident, shows their bias and reasons to retaliate against Mr. Baez, by entering false documentations and/or entries and medical reports, including their versions of the events on 11/17/16. Alleging that LPN King did not inject saline directly into Mr. Baez' penis, which was the direct cause of Mr. Baez' internal bleeding, hemorrhaging and injuries still today. Which contradicts (both) the discriminatory, bias and partiality of Judge Lenihan and the defendants versions, These are genuine issues of material facts in dispute, and Mr. Baez is entitled to summary judgment. No prisoner with a "Death Sentence" has any chance in the world to a fair and impartial Court proceedings In The Western District and/or with Magistrate Judge Lenihan, her record with Capital cases will clearly reflects this claim, who clearly despise this Plaintiff, and **all** Death Row prisoner. The Court has acted for year(s) as the DOC/Defendants legal representative, and **not** acting as a Judge with a capability to stay or be impartial and fair towards capital case prisoners, namely Mr. Baez. For the record; this is **why** Judge Lenihan was (picked) to preside this case specifically. The DOC and Defendant(s) **controls** Judge Lenihan. For the docket will clearly demonstrates this claim and allegations.

Plaintiff objects and disputes the Court' and Defendants' distorted assertions, when the Court avers that, the Corrections Defendants are not

8

responsible for improper medical treatment of Plaintiff. For the record; if the Court is implying to the Correctional Officers LT. George, SGT. Harouse, CO. Brown, CO. Derry, Jane/John Doe(s) ? Plaintiff never alleged that the DOC defendants were responsible for "improper medical treatment". But; rather that, they denied and delayed medical treatment, as a direct and proximate result for filing grievance against them. Plaintiff, also asserts that, the Law is clear that the DOC Officials has a well-established duty of care to Mr. Baez by Law, **Estelle V. Gamble**, **429 U.S. 97, 103 (1976).** The DOC and Defendants failed to **perform** their duty of care, in a case of an Emergency and/or should have been **trained** as to what **constitutes** an Medical Emergency situation.

The Court's avers in its ongoing attempt to **obfuscate** the evidence, a medical record produced by Mr. Baez, from Washington Hospital. A single document from the Physician at the E.R. stating **their** diagnosis and evaluations to Mr. Baez' visit to the E.R. [Doc. 128]; also see in support [Doc. 129 at ¶12-16]. Where the dispatcher describes the following: "Dispatched to SCI Greene for a male patient **bleeding from his catheter**". See attach (EMS Medical Report) dated 11/17/16, Section (Chief Complaint (Category: Hemorrhaging). The defendants had personal and constructive knowledge what **caused** Mr. Baez to hemorrhage internally, when they stated themselves the actual **cause** of Mr. Baez' bleeding, it was the direct and proximate results of **(2) catheters inserted incorrectly.**

The Court then tries to obfuscate, the defendants' claim that Mr. Baez' medical records directly contradicts Mr. Baez's allegations. That he was bleeding "onto the table, clothes and floor", she avers the progress notes indicates, that there was a small amount of bleeding that then stopped, and clear yellow urine was draining. (ECF No. 107 ¶21 & Progress Note of 11/17/16 at 11:00am hr. ECF 108 at ¶60). Judge Lenihan continues to deliberately disregard the fact, that, documents (ECF No. 107 ¶21 & Progress Note of 11/17/16, at 11:00 hr. ECF No. 108 at ¶60), is only based upon RN Tate assertions of event, but not LPN King'

versions. Her allege descriptions of what occurred on 11/17/16, in the triage room. The progress notes Judge Lenihan relies upon is based and written by RN Tate. Who did not participate nor personally assisted LPN King, in the removal or replacement of the new catheter. Because the fact is, that she was **standing behind the curtain divider and the threshold entrance of the triage room**, while LPN King removed and replaced a new catheter. Plaintiff also noticed "no documentations or progress notes produced by the defendants or the Court, written personally, that Mr. Baez is aware of, by LPN King, in relations to what occurred on the date in question, when King had removed the old catheter and inserted a new catheter, into Mr. Baez' penis. And RN Tate was <u>behind</u> the curtain, <u>she was not able</u> to personally view what occurred. The bleeding started the second LPN King injected saline solution into the penis, and never cleared up and/or stopped dripping blood into the urine bag. Moreso, King told Baez, that it will eventually clear up when Mr. Baez urinates. But, that was not the case. The Court has two different versions of the events in which **creates** a genuine issue of material facts in dispute.

The Court then attempts to minimize the defendants' malfeasance stating; Defendant Frazer came to Plaintiff's housing unit **later** the evening to assess Plaintiff's complaints of a painful foley. Judge Lenihan is fully aware according to the T.A.C. at [Doc. 34 at ¶183], the **exact time** RN Frazer arrive to examine Mr. Baez' serious medical emergency. RN Frazer arrived at 8:29pm, this would be (6) hours later. When medical received the first call at 2:30pm according to CO. Derry to Mr. Baez. And allegedly defendant LT. George was notified of Mr. Baez' medical problems. T.A.C. [Doc. 34 at ¶181], and according to the other (2) Missing Grievance(s) filed against Defendants LT. George, SGT. Harouse, CO. Brown, CO. Derry, Jane/John Doe(s) of the events in question on 11/17/16. For the record; Plaintiff's Criminal Attorneys informed Mr. Baez, that they had a copy of

the (2) missing grievances the Court and Defendants denied Mr. Baez through discovery. Please see attach Grievances No. 653082, filed against defendant CO. Brown; Grievance No. 653087 filed against defendant LPN King; Grievance No. 653684 against SGT. Harouse, CO. Derry, LT. George and Jane/John Doe(s); for this Court's review and/attach to said Grievances are a true copy of Mr. Baez' Exhibits of the (3) Affidavits from the (3) Prisoners who witnessed said events on the night/date and time in question.

Plaintiff will agree with the Court in regard to the medical records, that states Mr. Baez had **loss more than what the progress notes alleges**. Which indicates Mr. Baez had **loss approximately 300cc of blood in his urine bag**. Which supports Mr. Baez' versions of the events, indicating that he was in fact dripping blood for hours into the bag. Plaintiff was taken to the triage room at 8:40pm, in order to remove the catheter. Upon removing the catheter that **caused** Mr. Baez' penis to bleed profusely. RN Frazer was attempting to stop the uncontrollable flow of dark red blood from pouring out Mr. Baez' penis, by using his hands, and/or anything that the guards could find to catch all the blood from pouring out Baez penis, to no avail. The (EMS Reports of 11/17/16) supports Mr. Baez' versions of this event. Moreso; in an attempt to stand Mr. Baez up. Mr. Baez **loss consciousness** between 5 to 7 minutes or more. As a direct and proximate results of the serious amount of blood loss.

The Court and defendants also failed to mention, that upon the (EMS) arrival to L-D-Pod where the triage room is located, **made** the following descriptions of **"their observations"** of the triage room in their (EMS Medical Report) which again supports Mr. Baez versions of the events, See (EMS Report at 20:58 hr. Section Activity) - Patient was found CAO X 4 sitting on a exam table in the first aid room of the cell block along with RN. There was **copious amount of blood** on the front and back of the patient' clothing. There were also several bloody gauze

11

bandages laying around the room. There was a **"Container on the shelf of the room that was also <u>filled</u> with dark red blood"**. The patient was very pale and diaphoretic. There was a gauze around the patient' penis that also has dark red blood on it. The RN Rick gave me a patient report. The patient had a urinary catheter placed earlier today around 11:00 and since the patient has been complaining of some pain to his groin and lower ABD. The RN stated that when he removed the catheter from the patient copious amount of dark red blood along with some blood clots started to come out of the patient' penis. There was also dark red blood in the patient's catheter bag. The RN also state that the patient had passed out on him when they attempted to stand the patient. The RN estimated that the patient has <u>lost</u> at least 1 liter of blood. The patient himself stated that he feels very weak and dizzy. He no longer having pain in his groin and ABD. The bleeding from the patient' penis has slowed and is just oozing slowly at this time. Plaintiff provided other information to the EMS Ms. Workman, in regards as to how Mr. Baez penis continued to drip blood into the bag, despite RN King' assurance that it would clear up once he urinate, but only blood continued to drip into the bag, throughout the day. For the record, the Court and defendants engaged in Ex-parte to deliberately denied Mr. Baez, a copy of the (EMS Reports), even after repeated requests to the Court and Defendants for discovery of all medical records, reports, outside specialists reports, and was denied that right to file an effective response to the defendants summary judgment. Plaintiff's attorneys had to obtain the (EMS Report) from the Washington Hospital, for this Honorable Court' review of the deprived evidence. This is a miscarriage of justice by a bias and partial Judge Lisa Pupo Lenihan, for the sole purpose to denied Mr. Baez judgment in his favor.

Judge Lenihan continues her attempts to obfuscate the truth, facts and evidence, when Judge Lenihan accepted the defendants' alleged allegations that,

LT. George, SGT. Harouse, CO. Brown, CO. Derry, Jane/John Doe(s) as correctional officers, had relied upon Defendant Dr. Valley' and the medical department' assessment that **there was no medical emergency.** How would Defendant Dr. Valley "know" that Mr. Baez' complaints was **"not a medical emergency",** when no one from medical was **sent to examine Mr. Baez.** And if the Correctional Officers do not "know" what **constitutes an medical emergency,** then they should not be working for the Department of Corrections, for **they** are fully responsible for Mr. Baez' welfare. Plaintiff also contends that, these incompetent defendants never told medical personally the **truth** of Mr. Baez' medical emergency, and that Mr. Baez had **informed** each defendant that he was hemorrhaging internally and blood was filling the urine bag, due to the catheter inserted incorrectly. Plaintiff also contends that, it is the officers responsibility to **relate accurate medical information** to medical personnels, in order to determine if Mr. Baez complaints **constitutes an medical emergency.** If, Mr. Baez' medical complaints was not an medical emergency, the Defendants would have not summoned for the EMS, to have Mr. Baez transported to the E.R. immediately. Plaintiff believes that, in this case, a layperson could have recognized the need for a doctor medical attention, when a person is bleeding from his penis.

Plaintiff avers that, Judge Lenihan and the defendants deliberately denied Plaintiff the rights to discovery to a true and correct complete copie(s) of the Corrections Defendants' incident reports forms (DC-121 Part 3, Revised 8/2012 Attachment-C 6.3.1. Section-17) A Pennsylvania Department of Corrections Employee Report of Incident Attachment 17-C, Page 1 of 2 Form. The Court also comments on how she rely upon the DOC and Defendants' Grievance Responses against Mr. Baez, is nothing more than self-serving, for what else would the Court expect the Grievance Respondent to say ? The Officers acts were in furtherance of Plaintiff's pain and sufferings, which was their actual intent, through their retaliatory acts. At the same time, the Court does not consider a single word

from Plaintiff' Grievances filed against the defendants. Clearly demonstrating her bias, partiality and inability to be neutral and/or fair throughout the proceedings of this case, its simple Judge Lenihan is playing the role of favoritism for the DOC in order to denied Mr. Baez at all cost summary judgment in his favor.

2.   DEFENDANT DR. VALLEY

Plaintiff objects and disputes the facts that Dr. Valley, is a ethical and/or professional licensed physician, who works as the acting medical director at SCI Greene, from June 2016 through March 2017. (ECF No. 114 & 118 ¶2). Plaintiff would also disagree and disputes the Court' descriptions of Mr. Baez' Chronic Medical Conditions, when the Court had minimized it down to only (10) Chronic Diseases, when it much more than that. And in order to get a much more better and serious understanding of Mr. Baez' Chronic Illnesses and Over lapping Symptoms, a true and accurate list has been attached for this Court' review. All diagnosed by the DOC and their outside Specialists, there is no dispute by the DOC or the Defendants. See attached copy of Plaintiff' Exhibit-(List Of All Baez' Chronic Diagnosis). The Court would believe the defendants' false allegations, that Mr. Baez' circumcision wound healed slowly and was treated numerous times, and the Court list numerous alleged dates that Mr. Baez was seen and/or treated. The Court has failed to acknowledge or recognized Mr. Baez' allegations and exhibits of 142 sick call slips produced by Mr. Baez, where the defendants failed to show up for a sick call consultation, or treated his open wound, on the dates and times, the defendants/Court alleges Mr. Baez was treated. See [Doc. 148-4, No. 26 Exhibit Sick Call Slips and No. 27 Exhibit Sick Call Slips Part-2). The sick call slips proves dates and how many times, Mr. Baez was not treated/or seen for his ongoing complaints regarding his skin outbreaks and open wound not healed

properly, even to date. As a direct result of the defendants' retaliatory acts for filing multiple sick call slips, grievances, lawsuits, complaint letters to Central Office, Health Care Provider, Department of Health, etc.

Plaintiff objects and disputes the Court' and defendants' false assertion, that on Mar. 12, 2015, Dr. Jin examined Mr. Baez' open wound, or that Baez' wound was clean and dry, when Dr. Jin never examined Baez. Mr. Baez placed Dr. Jin/DOC on noticed via numerous sick call slips, grievances and verbally, that several stitches began to come apart exposing an open wound/flesh and bleeding. See [Doc. 34 at ¶64-65]. Also see, [Doc. 148-4 Exhibit-D at p.2, ¶23]. These are a genuine issues of material facts in dispute.

Plaintiff objects and disputes the Court' and defendants' allegations that, on Mar. 20, 2015, that Dr. Jin noted that Mr. Baez' circumcision was healing well. Stating four stitches were loose and out, and Mr. Baez was taping the wound closed himself without complaint of pain. The Court also states On Mar. 20, 2015, upon examine Plaintiff's circumcision was healing well. But; how can Mr. Baez' circumcision healing well, when four of his stitches were loose and out. Claiming Mr. Baez was using tape to close his wound without complaint of pain. Mr. Baez request the Court to see [Doc. 131 ¶ 23], the defendants are contradicting what they now claim, as to what they filed on 10/4/19. Which states: Dr. Jin supplied Baez with medical tape for his open wound and **told** him not to worry about it. [Doc. 148-4 Exhibit-1, ¶¶68-71], it was Dr. Jin who instructed Mr. Baez to tape his wound close and not to worry about it. Which contradicts Dr. Jin/Defendants allegations, also see Defendants' Exhibit "A", ¶¶68-71. These are genuine issues of material facts in dispute. Dr. Jin supplied the tape, because he didn't want to send Baez to the E.R. to be re-stitched, in retaliation for grievances and lawsuits filed against him.

Plaintiff objects and disputes the Court' and Defendants' ongoing attempts to obfuscate the truth, when the Court stated; On Mar. 27, 2015, Dr. Jin noted dehiscence **all** around with serious drainage to Mr. Baez' incision, with no infection, and blames Baez' medications for the poor healing process. But no one changed Baez' medications, and yes he was seen by a Urologist Dr. Chaudry. But, [Doc. 34 ¶¶72-74] contradicts the Court/Defendants' version of these events. Also see, [Doc. 131 ¶¶127-129], what a huge difference from Judge Lenihan' and Defendants' claims. For the record, Mr. Baez, never received any treatment on the date/time the Court claims, he saw Dr. Chaudry. And "no surgical care" was performed. See [Doc. 34 ¶¶72-74] prolonging Mr. Baez' pain and suffering, for **two long months,** to have Mr. Baez re-stitched on May 21, 2015. For the record; if it were not for Mr. Baez and his family complaints, Dr. Jin would never had sent him to see Dr. Chaudry on Apr. 26, 2015. See [Doc. 23 at p.4, dated Mar. 26, 2015]. Upon information and belief, Bbaez was not re-stitched because it was planned by Dr. Jin not to re-stitched Mr. Baez. In retaliation for complaining, grievances, lawsuits, etc. These are genuine issues of material facts in dispute.

Plaintiff objects and disputes the Court' and defendants' versions of event, that, on Apr. 1, 2015, Vitamin C was ordered to aid healing of Mr. Baez' "two inch open bloody wound". It's ironic that Dr. Jin orders Vitamin C in an attempt to aid in the healing process. But; the defendants refused to have Mr. Baez re-stitched at an early stage, upon repeated requests for two months in retaliation for the grievances and lawsuits, complaints by his family. It is noted that the defendants stated; It is noted that this would be a long healing process. [Doc. 131 ¶130]; also see Defendants Exhibit "C", p.268. This clearly contradicts the Court' and defendants' claims of Mar. 20, 2015.

Plaintiff objects and disputes the Court' and Dr. Jin ongoing attempt to obfuscate the truth, when it stated that on Apr. 3, 2015, Dr. Jin examined Mr. Baez' two inch open wound. Mr. Baez did not complain of an infection at this visit, but excruciating pain, and request to be re-stitched, but again was

16

denied. Mr. Baez wound was not a small separation as the Court falsely alleges, but a two inch separation, and its been that way, since Mar. 2015. And for the record, Dr. Jin refused to examine Mr. Baez at this visit. See [Doc. 34 ¶¶75-76]; Also see [Doc. 131 ¶133] contradicts what the defendants claim. Dr. Jin talks about Baez Grievances. Plaintiff noted the Court never mentions of Mr. Baez' Exhibit [Doc. 148-4 No.-7 Grievance No. 564178], where Dr. Jin made the following statement; "Maybe You Deserve To Be Castrated".

Plaintiff objects and disputes the Court' and defendants' distorted allegations that on May 1, 2015, Dr. Jin recommended the closure of Mr. Baez' Dehiscent circumcision wound. The Court deliberately ignored the month of complaints for the month of Apr. 2015, numerous sick call slips seeking medical attention. In support see [Doc. 34 ¶¶76-79], also see attached Sick Call Slips; 1.) slip no. 284 dated 4/9/15; 2.) slip no. 285 dated 4/16/15; 3.) slip no. 286 dated 4/16/15; 4.) slip no. 287 dated 4/23/15; 5.) slip no. 288 dated 4/23/15; 6.) slip no. 289 dated 4/29/15; 7.) slip no. 290 dated 4/29/15. These exhibits are genuine issue of material facts in dispute. Mr. Baez received no care for his two inch open wound, skin outbreaks and chronic needs.

Plaintiff agrees with the Court and Defendants, that Mr. Baez two inch open wound was finally re-stitched on May 21, 2015, exactly (two long excruciating months of pain and suffering). In suport see [Doc. 34 ¶¶83-86] also see, [Doc. 148-4 ¶28]. And due to the lack of treatment, Mr. Baez' skin lupus outbreaks had spread to his anus, causing bleeding, and other complications. These are genuine issues of material facts in dispute.

Plaintiff objects and disputes the Court' and defendants' attempt to obfuscate the truth and minimizing Mr. Baez' injuries and chronic conditions. Mr. Baez noted that the Court deliberately ignored the "entire months" of complaints by Mr.

Baez, for June and July 2015, lack of treatment/no pain meds in a timely manner. See [Doc. 34 ¶¶90-121]. The above are genuine issues of material facts in dispute.

Plaintiff objects and disputes the Court' and defendants' ongoing attempts to obfuscate in minimizing Mr. Baez' chronic complaints and skin outbreaks. Mr. Baez would agree that on July 30, 2015, two months after the second surgery, that his wound was still not healing well. That "Ulcers like painful lesions" was seen around Mr. Baez' circumcision, and his upper penile area. Now the defendants' and Court try minimize the seriousness of Mr. Baez' severe skin outbreaks/and pain. The defendants' chose a course of treatment known to the defendants to be ineffective and prolonging the pain/suffering. Because grievances, lawsuits and complaints. [Doc. 148-4, Exhibits 1-27 Part-2] are all genuine issues of material facts in dispute.

Plaintiff objects and disputes the Court' and defendants' allegations, that Mr. Baez received wound care relating to his circumcision/penis. Mr. Baez cannot confirm nor deny whether he received care until Jan. 7, 2017. As Mr. Baez stated throughout his objects, that the Court and Defendants' engaged in Ex-parte Communication to denied Mr. Baez copies of all his medical records/reports of **all** outside specialists, in relations to his skin lupus outbreaks and circumcision/penis injuries. The above has created a genuine issue of material facts in dispute, and a miscarriage of justice.

Plaintiff objects and disputes the Court' and defendants' false allegations as to a non-defendant Dr. Santos, alleged evaluation on June 17, 2016. Mr. Baez avers that, since Dr. Santos is a non-defendant in this case. Therefore, no response is required. Judge Lenihan is acting as defendants "legal representative/and advocate".

Plaintiff objects and disputes the Court' and defendants' ongoing attempts to obfuscate the truth of events that on July 7, 2016, Dr. Valley did informed Mr. Baez that the X-rays did not revealed any abnormalities. In support see [Doc. 34 ¶153], Mr. Baez also denied that Dr. Valley provided any treatment for his open wound, skin outbreaks injuries, and/or other chronic complaints. His examination consisted of checking Mr. Baez' breathing, stomach, legs, arms for strength/mobility, and listened to bowel movements. Dr. Valley refuse to examine Mr. Baez open wound. And Mr. Baez has no knowledge whether Dr. Valley, reviewed any documents/or records. These are genuine issues of material facts in dispute.

Plaintiff would agree with the Court and defendants' allegations that on July 12, 2016, Dr. Valley, examined Mr. Baez' right arm, shoulder, neck, chest, assess the stomach and left side of face pain. But, ignored Mr. Baez' complaints for his open wound, skin outbreaks consisting of painful blisters, lesions, open ulcers, rash, cracked skin, cuts, sores, to his lower back, buttocks, genitals, and anus causing bleeding. Including Mr. Baez' ribcage and lung pains. See [Doc. 148-4, No.26# Exhibit Sick Call Slips, No.27# Exhibit Sick Call Slips 382 Dated 7/10/16 & 383 Dated 7/13/16].

Plaintiff objects and disputes the Court' and defendants' allegations, that on July 22, 2016, alleging that Mr. Baez was evaluated by Dr. Valley/or examined for sick call. It is true Mr. Baez requested to be transported to the E.R. to be examined by a competent physician who is unbiased and impartial to Mr. Baez' medical complaints. Mr. Baez asserts that Dr. Valley was not listening and not taking his complaints seriously, and that Mr. Baez complained of severe right rib cage and lung pains, difficulty breathing, open wound pain, and for his skin lupus outbreaks injuries to be treated. This sick call visit took place at Mr. Baez' cell door, r, no examination took place. See [Doc. 148-4, No.26# Exhibit

Sick Call Slips 386 Dated 7/21/16], its clear that Mr. Baez needed emergency medical attention, for the pain was unbearable.

Plaintiff objects and disputes the Court' and Defendants' false allegations that on July 27, 2016, PA. Mwuara examined/treated Mr. Baez. See [Doc. 148-4 No.11, Exh. Grievance-7 No. 636337]; and [Doc. 148-4 Exhibit-(D) ¶163 p.4], no was pprovided. Mr. Baez' Lupus appointment was not scheduled sooner, months later. Also see [Doc. 148-4, No.26# Exhibit Sick Call Slips 387 dated 7/26/16 & No.27# Exhibit Sick Call Slips 388 dated 7/26/16].

Plaintiff objects and disputes the Court' and defendants' allegations regarding a non-defendant Dr. Santos dated Aug. 4, 2016. Due to Dr. Santos is not a defendant. No response is required. Judge Lenihan know that Dr. Santos is not a defendant in this case, she' acting as the DOC legal advocate.

Plaintiff objects and disputes the Court' and defendants' ongoing attempt to obfuscate the evidence claiming, Dr. Valley attend a telemedicine consultation on Aug. 25, 2016 between Mr. Baez and a dermatologist. Mr. Baez dispute the course of treatment, when he was prescribed Lotrimin and Triamcinolone Articort Cream. The Medical Defendants were all fully aware for year(s) that the Triamcinolone Cream known as Articort, was prescribed numerous times for Mr. Baez' skin lupus outbreaks, and knew that it also exacerbated Mr. Baez skin and injuries, causing additional skin damage. See [Doc. 148-4, No.9 Exh. No-5# Grievance 524840]; see also, [Doc. 148-4 Exhibit-(D) p.13, ¶¶82-83]. Mr. Baez was unable to use the Articort Skin Cream, and his condition worsen.

Plaintiff objects and disputes the Court and defendants' allegations in regards to Dr. Santos alleged treatment dated Nov. 1, 2016. Again due to the fact that Dr. Santos is not A Defendant. No response is required. Judge Lenihan is

clearly acting as the defendants' legal advocate.

Plaintiff objects and disputes the Court and defendants' assertions that on Nov. 1, 2016 Dr. Valley allegedly an request for an Endrocrinology Consult, due to the fact that Mr. Baez has been on prednisone for a long time from his (SLE), from a diagnosis of Osteoporosis by Dr. Hwang. And its correct that Mr. Baez was being treated with Oscal, Risedronate and Alendronate, which caused a severe excruciating reactions, that was the direct and proximate results of (2) two of Mr. Baez' ribs (8th & 9th ribs) to be fractured, and a devastating skin outbreaks reactions of Dark Black Blood Blisters, Rashes and Hives covering Mr. Baez entire back for several weeks, and Lungs complications, etc.

Plaintiff objects and disputes the Court' and Defendants' attempts to obfuscate the events and evidence that on Nov. 16, 2016, Mr. Baez had returned from the Washington Hospital. This is false, it was Nov. 17, 2016, that Baez was sent to the hospital and returned on Nov. 18, 2016, as a direct and proximate results of (2) Catheters inserted incorrectly, which cause Mr. Baez to hemorrhage internally and bleed into the urine bag since 11:30am until RN Frazer removed the 2nd catheter, which caused the bleeding in the first place. The Court is trying to obfuscate the truth of this event, when it alleges that, "this incident did not involved any of the medical defendants". The Court is blind and the defendants has lost their mind. See [Doc. 131 ¶167], when LPN King, RN Frazer and Dr. Valley including but not limited to, Jane/John Doe(s) were involved, these are all medical defendants, medical created this situation when they refused to provide Mr. Baez with adequate/effective medical treatment in a timely manner, in which escalated to physical injuries, pain, sufferings, (2) fractured ribs, lung complications, health problems permanent scars, two unsuccessful surgeries, and retaliatory abuse.

21

Plaintiff agrees that he was seen at the W.H.S. Wound Center, and seen by Dr. Diamond, but these treatments was later and not immediately, and after Mr. Baez has suffered physical injuries stated above in details. As for RN Blaker is concern, he is not a defendant in this case, and requires no response. Mr. Baez agrees that Dr. Valley did speak with him, and Mr. Baez also told Dr. Valley, of his ongoing bleeding from his urethra and pain to his groin due to the catheters incidents, and from skin lesions. It is believe that a consult with a Urologist was ordered. And on Dec. 12, 2016, a telemedicine consult took place between Mr. Baez and a Urologist, but the Court intentionally refused to mention "how long" it took for this medical examination by the Urologist. It was not until Apr. 20, 2017, when the defendants sent Mr. Baez, and the consult had to be re-scheduled for a later date, Mr. Baez was not even examined at this visit, after waiting such a long time, all the while he continued to experience pain and bleeding. For the record, the next time Mr. Baez was sent for his follow-up appointment, was on Nov. 30, 2017, this is how much the defendants cared about Mr. Baez' medical conditions. By this time the bleeding has subdue, but the pain to his groin and penis continues this day, and complications.

Plaintiff objects and disputes the Court' and defendants' assertions to obfuscate the evidence. Mr. Baez would agree that on Nov. 30, 2016, Dr. Valley ordered a Toradol injection for Mr. Baez' (6) months of complaints of right rib cage and lung pains, which was totally ineffective. Mr. Baez has no way of knowing whether Dr. Valley ordered blood count, comprehensive metabolic panels, amylose and lipese testing, or imaging. Since the Court and defendants engaged in Ex-parte Communications to deliberately denied Mr. Baez, of his rights and repeated requests for Discovery, especially all medical records, and reports, etc. And as for the interpretation of Robert Rablea, MD, has no barring in this

case, since he is not a defendant, no response is required. Plaintiff did not refuse blood and or pain meds. These allegations are false and a direct result for all the complaints, multiple of sick call slips, grievances, lawsuits, etc. See [Doc. 117 ¶30]; also see [Doc. 148-4, Exhibit-(D) ¶169] and [Doc. 118 ¶30] contradicting the Court and defendants' allegations, creating a genuine issue of material fact in dispute.

Plaintiff objects and disputes the Court and Defendants' attempts to obfuscate the evidence, when the Court states, that on Dec. 1, 2016, Mr. Baez was examined by Dr. Valley for complaints of right side upper quadrant abdominal pain for the past three days. The Court is deliberately distorting the evidence produced by Mr. Baez, when the Court is aware that Mr. Baez proved that he complained of right side ribcage and lung pain, among other health issues, since June 2, 2016. When Defendant PA. Mwuara prescribed the medication (Risedronate) on May 27, 2016, for Mr. Baez' Osteoporosis, in which was the direct results and cause to a negative reactions/effects, that fractured (2) of Mr. Baez' ribs the (8th & 9th ribs), and created other lung complications to date. See [Doc. 34 ¶¶154-165]; [Doc. 152 at p.8, dated Nov. 1, 2016 and p.9]; (ECF. No. 114 & 118 ¶16). And in additional support see attached Exhibit Grievance No#. 628834 dated 6/3/16. Contradicting the Court' distorted claims that Mr. Baez was complaining of right ribs and lung pain for only (3) days. The results of the above event, Plaintiff spent (5) painful days in the Washington Hospital, until Dec. 5, 2016. The above are genuine issues of material facts in disupte.

Plaintiff object and disputes the Court' and Defendants' false allegations stating that Mr. Baez attended a ENT Consultation on Dec. 7, 2016. Plaintiff does recalls how Defendant, Dr. Valley denied Mr. Baez' follow up at the Wound Care Center on Dec. 7, 2016. Mr. Baez' criminal attorney Mr. Samuel Angell, esq;

contacted the WHS Wound Care Center on Dec. 7, 2016, and spoke with a Mrs. Heather, in regards to Mr. Baez' follow up visit for Dec. 7, 2016. And according to Mr. Angell, he informed Mr. Baez, that Mrs. Heather personally called the (DOC) on Twice on Dec. 7, 2016 and on Jan 3, 2017, and received no response for the DOC. This is genuine issues of material fact of dispute. Mr. Baez was sent to the Wound Care Center on 1/11/17, and for the ENT Consult, on 3/27/18, exactly two long years, to be sent back to the ENT. This is genuine issues of material fact in dispute.

Plaintiff objects and disputes the Court' and defendants' attempts to obfuscate the evidence and the truth, that on Dec. 12, 2016, Dr. Valley participated in a Telemedicine Conference Consult, between Baez and the Urologist Dr. Shank. Here the Court and Defendants' finally reveals the true cause of Mr. Baez' bleeding and pain to his groin and other complications. When they stated: ("Due to urethra bleeding after two foley catheters insertions more than one prior week"). The incident occurred on 11/16/16 and 11/17/16, when **both** catheters were inserted incorrectly, and **not** three days as Judge Lenihan is falsely claiming. If Mr. Baez, was up-set and anrgy, that was due to Dr. Valley intentionally interrupting Mr. Baez, while Baez was attempting to address, all of his medical complaints to Dr. Shank. Dr. Valley continued to provoke Mr. Baez, by not allowing Baez to explain to Dr. Shank, as to what happened with the incompetence of two nurses, who just couldn't insert a catheter correctly, and as a direct and proximate results of their negligence, Mr. Baez suffered internal injuries, hemorrhaging within, bleeding for hours from his penis, pain to his groin, penis, shaft at times, urinating complications, etc. The above are genuine issues of material facts in dispute. For the record; it was until Jan. 30, 2018, that Mr. Baez had to wait to have the cystoscope test done (2) long years in pain.

Plaintiff objects and disputes the Court' and defendants' attempts to obfuscate the facts and evidence, when no X-rays were taken on Jan. 7, 2017. The Court continues to repeat itself about the same x-rays of chest, wound care center consult, Mr. Baez responded to this, but none of it took place immediately but months and even years later, for non-medical reasons, other than to retaliate for grievances and lawsuits. Mr. Baez' family and criminal attorneys filed numerous of complaints to central office regarding the defendants' retaliatory acts and ongoing delays, to prolong treatment, tests and consults follow ups, pain meds not provided, medications not being delivered to Baez, lupus follow up past (6) months due date, blood technician failing to show up to take blood/urine samples, physician failing to show up for sick call, x-rays not taken in a timely manner, all for non-medical reasons. The defendants would crush Mr. Baez' meds in retaliation/then blame him of not taking his meds, when medical is aware that Mr. Baez suffers from S'jogrens Syndrome, a chronic dry mouth/eye conditions, which prevents Baez to take meds crushed, because it burns his throat and swells up. They blame DOC Meds Policy, but they fail to mention that there are exceptions. It is the physician' discretion to allow patient to take it uncrushed. See attached typed policy for "crushing medications" under 13.2.1., ACCESS TO HEALTH CARE PROCEDURE MANUAL, Section 12 Pharmacy Guidelines. The defendants refuse to consider the guidelines in Mr. Baez' case, due to his S'jogrens Syndrome, this was in retaliation and because he was considered as a nuisance to defendants, not as a patient. Dr. Valley was fully aware of the severity of Mr. Baez' skin lupus outbreaks/injuries to his penis, but disregard Baez' wound care follow up for Dec. 7, 2016, instead, he deliberately ignored the (2) wound care center calls by Mrs. Heather on 12/7/16 and again on 1/3/17. But, it was **not** until 3/27/18, that the defendants finally sent Baez to his follow up, two years later, this is how much they cared, and Judge Lenihan failed to mention this part of this delay for non-medical reasons, remember the DOC never returned Mrs. Heather's two calls,

they provided no medical reasons other than to retaliate.

Plaintiff objects and disputes the Court' and defendants' attempt to obfuscate the facts and evidence , when the Court stated; On Jan. 8, 2017, Dr. Valley met with Mr. Baez, to discuss the very same conversations they had many months ago, in regards to the x-rays, ct-scan, pulmonary test, ENT, lupus center, endrocrinology, urologist, imaging, wound care center. But, Judge Lenihan never states "how long" it took the defendants to send Mr. Baez to the above treatment/tests and consults. ("SOMETIME IT TOOK YEARS"). The Court then points out the imaging test, a Dr. Zimmmerman interpreted about "body structure intact", but they (can't see the 8th & 9th ribs fractured) ? And since this person is not a defendant, no further response is required. And as for the "Levaquin" is concern ? No one ever spoke with Mr. Baez, about this medication being ordered and/or for what for. This is why Mr. Baez ended up with (2) fractured ribs and severe lung complications in the first place, prescribing medications without first consulting with Mr. Baez, and/or educating their patient of the dangers and side-effects, etc. This is why Mr. Baez did not take it.

Plaintiff objects and disputes the Court' and defendants' ongoing attempts to obfuscate the truth and evidence, when the Court now states that, on Feb. 2, 2017, Mr. Nicholson, CHCA; performed a chart review and so on. The Court opine vigorously upon Mr. Nicholson' alleged allegations of treatment. What the Court failed to acknowledge is that Nicholson is not a defendant, and for that reason, does not requires a response. This Judge is acting as a advocate for the defendants, she's not impartial, but clearly bias/partial.

Plaintiff objects and disputes the Court' and defendants' attempt to obfuscate the facts and evidence, when Judge Lenihan again states; on Feb. 20, 2017 Dr. Valley ordered a follow up CT Scan of the chest to be completed in six months for

further evaluation of the pulmonary nodules. And Dr. Valley ordered a follow up pulmonary function test. Mr. Baez states that these are the very same ongoing claims by the Court and defendants for the same ongoing test/treatment discussed many months ago, and Mr. Baez responded to this numerous times above. The only difference is that the Court and defendants continues to deliberately "change the dates", when Dr. Valley discusses when he will decide to order these tests/treatment, nothing more. And no further response is required nor needed. For the record; Mr. Baez never saw Dr. Valley on Feb. 20, 2017 in regards to the above, so Mr. Baez has no way of knowing about Dr. Valley's orders, etc. And the Court is incorrect. Plaintiff "never agreed" that on an average, he was seen every two weeks and sooner when necessary. Plaintiff draws this Court's attention to [Doc. 118 ¶46-47] and [Doc. 120, 120-1, 120-2, 120-3]. These are genuine issues of material facts in dispute.


3. <u>DEFENDANTS BYUNGHAK JIN, MD: MIN HI PARK, MD: PAUL DASCANI, MD: LAURENCE ALPERT, MD: ESTHER MATTES, PA: ELDON MWUARA, PA: (COLLECTIVELY DEFENDANTS)</u>


In March of 2014, Plaintiff suffered from a severe Subcutaneous Skin Lupus Outbreaks in relations to his Chronic Illnesses Systemic Lupus Erythematosus, consisting of excruciating bloody blisters, rashes, open sores, lesions, bumps, ulcers, crack skin, to his lower back, buttocks, genitals, and spread to his anus, causing bleeding at times. The Curt failed to reveal that the defendants ignored Mr. Baez' sick call slips until July 5, 2014, when Defendant Dr. Dascani, visited Mr. Baez at his cell door for the first time for sick call consultation. Where Dr. Dascani never pulled Mr. Baez out of his cell to perform an physical examination of Mr. Baez' severe skin outbreaks, in order to assess the severity of Mr. Baez's conditions. Instead; Dr. Dascani decide to prescribe what's called

Hydrocortisone Cream, a cream known to be ineffective by Medical for Mr. Baez' (type of chronic skin disease). If Dr. Dascani would have taken (15 or 20 minutes) to review Mr. Baez' medical chart and history of subcutaneous skin lupus outbreaks attacks in the past, and what treatment has been ineffective, and which were effective. Dr. Dascani would have noticed that the Hydrocortisone is totally ineffective for Mr. Baez' skin disease, and that Hydrocortisone has been prescribed in the past, with negative effects, but, that it exacerbates Mr. Baez's skin, causing even more damage. A few days after trying to use the Hydrocortisone, Mr. Baez was forced to submit a sick call slip, complaining that the Hyodrocortisone was ineffective and exacerbating his skin causing burning, additional open wounds, pain, cuts, skin splitting, irritating lesions, ulcers to his penis, buttocks, and anus. And Mr. Baez was forced to (stop using the cream). On July 12, 2014 Plaintiff submitted a sick call slip, and on July 13, 2014, Mr. Baez was seen by Defendant Dr. Park who deliberately ignored Mr. Baez' complaints, that the Hydrocortisone was causing serious damage/exacerbating his skin and requested Dr. Park for the Betamethasone Cream prescribed in the past for his type of chronic skin disease. Instead, Dr. Park deliberately ordered more Hydrocortisone disregarding Mr. Baez' serious medical complaints, that the Hydrocortisone has caused additional skin damage, and could not use it. The re-ordering of the Hydrocortisone was a ongoing deliberate act of retaliation by Dr. Park against Mr. Baez, for numerous of Grievances Mr. Baez filed against Dr. Park, **prior** to this visit. For example; Grievance No#. 514236 dated June 16, 2014; Grievance No#. 515074 against Medical Staffs refusing to treat the ongoing injuries to Mr. Baez' skin. Plaintiff is unable to attach a copy of both grievances, due to the Court and defendants' engaged in Ex-parte Communication to denied Mr. Baez copies of all his grievances relating to this incident/injuries through discovery. Plaintiff was unable to (use the Hydrocortisone) which Dr.

Park also re-ordered in retaliation. See [Doc. 34 ¶¶39-41]. Yes; Mr. Baez saw Dr. Park on 7/24/2014, and again requested the Betamethasone cream for his type of skin disease. But, Dr. Park deliberately ignored Mr. Baez' request, and was kicked out of the triage room. Dr. Park did not examine Mr. Baez' serious skin injuries. Yes; on or about July 24, 2014, later that evening, a nurse dropped off (More Hydrocortisone), it was ordered by Dr. Park in retaliation for grievances, complaints, and lawsuits. Dr. Dascani and Dr. Park maintained a course of treatment known to the defendants to be ineffective for Mr. Baez' type of skin disease/outbreaks. On July 24, 2014 Plaintiff filed another Grievance No#. 520139, see [Doc. 148-4 Exhibit-5#, Grievance 1]. Then on July 27, 2014, a nurse drops off a small bottle of Triminacolone Cream (known as Articort), it was ordered by Dr. Park, (3) three days after Mr. Baez grievance no. 520139 was filed against him. For the record; this new cream Articort, is also (known) to be ineffective for Mr. Baez' skin disease and injuries. This cream was prescribed in the past, and reported by Baez, to the Medical Defendants to be ineffective and to also cause damage to his skin. The order of this cream (Articort) was another retaliatory act by the Defendant Dr. Park, for the grievances and complaints against him and medical. See [Doc. 34. ¶43-44] and [Doc. 148-4 ¶81-82]. These are all genuine issues of material facts in dispute.

The Court then states; that Mr. Baez contends that the defendant/Dr. Park **knew** Mr. Baez' skin was worsening because Baez filed sick call slips, verbally complained, filed grievances, indicating he could not use the cream. Mr. Baez avers that, what more does he have to do to place the defendants on notice, when he done his due diligence to place the medical defendants on actual and constructive knowledge of his skin worsening. [Doc. 34. ¶44]; and [Doc. 148-4 ¶15]. The Court then states; that on Aug. 20, 2014, Dr. Jin told Baez that he would order the Betamethasone cream, but Mr. Baez states he did not received it.

Mr. Baez avers that, the Court is correct. Dr. Jin did promised to order the Betamethasone cream. [Doc. 34 ¶45]; [Doc. 148-4 ¶16], Plaintiff was forced to file Grievance No# 524840 dated Aug. 27, 2014 for retaliation. See [Doc. 148-4 Exhibit No. 9, Grievance No.-5#] These are genuine issues of material facts in dispute.

The Court then refused to mention in her Report and Recommendation, that Mr. Baez was sent to his follow up Lupus Appointment to see Dr. Hwang, for his ongoing skin lupus outbreaks on Aug. 27, 2014, for the sole purpose to have Mr. Baez' skin injuries examined by their specialist. But; it is believed upon information and belief that, Dr. Jin informed Dr. Hwang **prior** to Mr. Baez' arrival, to (not examine) Mr. Baez skin injuries. In support see [Doc. 148-4 ¶¶91], Mr. Baez also filed a grievance [Doc. 148-4 Exhibit No.12, Grievance No.-8]. The Court also states that, on Oct. 9, 2014 PA. Mattes informed Mr. Baez, that her supervisor instructed her to limited Mr. Baez' sick call complaints to only (1) medical issue. [Doc. 148-4 Exhibit-1, T.A.C. ¶¶49-52]. The Court then refused to mention in her Report & Recommendation that, on Nov. 7, 2014, PA, Mattes again saw Mr. Baez, and limited Mr. Baez various medical complaints to only (1) medical issue. Lacking the authority to do so and in violation of medical sick call policies, DC-ADM 820 and 13.2.1.. [Doc. 148-4, Exhibit-1, T.A.C. ¶¶53-55]. The Court then states that on Nov. 21, 2014 Dr. Dascani informed Mr. Baez, that he would not provide Mr. Baez with treatment because Mr. Baez was suing Dr. Dascani and other medical staffs at SCI Greene. This is true. Then the Court claims that Mr. Baez was seen and allegedly treated on various dates; Oct. 12, 13, 17, 20, 21, 23, and 31, 2014 (ECF.No. 151 at 64-68). But the Court failed to mention that Plaintiff filed at least (9) nine grievances from Oct. 23, 2014 through Jan. of 2015, seeking relief from the defendants refusal to treat Mr. Baez' injuries. And some of the dates the Court mentions including the Months of

Nov. 2014, Dec. 2014 and Jan. 2015, were related to some non-defendants and does not requires a response. And those other dates the Court mentions, were discuss in the (9) Grievances Mr. Baez was forced to file in relations to those dates being seen/and at the same time, not being treated at all, but re-ordered **more** Hydrocortisone and Articort cream by the defendants in retaliation for grievances and lawsuits. See [Doc. 148-1, Exhibit-A, T.A.C. ¶¶57-60] The Grievances Mr. Baez filed between Oct. 2014 through Jan. 2015 are as follows: 531025; 533552; 533628; 536619; 537555; 537608; 538292; 539171; 543768;. Some of the mentioned grievance stated here, were denied by the Court and Defendants through discovery. These are genuine issues of material facts in dispute.

The Court states that on Jan. 27, 2015, Baez was referred to see a Urologist. Yes; on Feb. 12, 2015, Mr. Baez had his first consultation with Dr. Chaudry, and Baez was also told that his (only option) to eliminate the damaged skin, as a direct results of the ineffective course of treatment by the defendants. That Mr. Baez had to undergo a circumcision. And it is true that Mr. Baez, did not want to be circumcised, but had no other options according to Dr. Chaudry. Yes; on Mar. 11, 2015, Dr. Chaurdry performed the surgery on Mr. Baez. Mr. Baez also agrees that on the following day **after** the surgery on Mar. 12, 2015, all but (2) two stitches came apart, resulting in serious excruciating pain and bleeding. Mr. Baez submitted numerous sick call slips pleading and begging for medical attention and requested to be sent to the E.R., to be re-stitched. It is also true that on, Mar. 15, 2015, Mr. Baez was seen by Dr. Jin, who refused Mr. Baez' request to be re-stitched at the E.R. Forcing Mr. Baez to file numerous sick call slips. However; the Court failed to mentioned here that on Mar. 17, 2015, PA. Mattes visited Mr. Baez at his cell door again. But, PA. Mattes refused to examine or treat Mr. Baez, when he informed her that all but (2) stitches came apart, and he was in excruciating pain and bleeding at the site of his incision,

and requested to be sent to the E.R. That request was also denied. PA. Mattes refused to even examine Mr. Baez' skin lupus outbreaks which has worsen. See [Doc. 148-1, T.A.C., ¶66]; also see, [Doc. 148-4 ¶122]. The Court also states that on Mar. 20, 2015, Mr. Baez was seen by Dr. Jin again. And requested to be sent to the E.R. to have his (2) two inch open bloody wound closed. Dr. Jin refused Mr. Baez' need for medical attention/re-stitched. Instead; this defendant Dr. Jin, gave Mr. Baez a roll of medical paper tape to **close** his bloody wound, and told Mr. Baez not to worry about it. [Doc. 148-1, EXHIB-A T.A.C. ¶¶69-71]. The Court also states that, on Mar. 26, 2015, Mr. Baez was sent to see the Urologist Dr. Chaudry. This may be true. However; Mr. Baez object and disputes the Court' and defendants' ongoing attempt to obfuscate the facts and evidence in this case. When the Defendants failed to notified the Court that, if it were **not** for Mr. Baez' family, attorneys and numerous of Mr. Baez' complaint letter(s) to the State Health Department, Mr. Baez would not have been sent to see Dr. Chaudry. When a legal representative from the department of health visited Mr. Baez on Mar. 25, 2015, where Mr. Baez **"pulled down his prison jumpsuit and exposed his two inch open bloody wound"** to a Mr. Fusch. Who advised Mr. Baez, that he will be talking to the provider Dr. Jin and the Correctional Health Care Administrator in regards to Mr. Baez' injuries, and the refusal to be re-stitched at the E.R. Plaintiff, can have his family and attorneys to testify for a jury in a court of law, if needed. These are genuine issues of material facts in dispute. However; upon Dr. Chaudry' examination of Mr. Baez' serious open wounds. Dr. Chaudry had informed that Dr. Jin had **"waited too long to be re-stitched"**. Upon information and belief, it is believed that Dr. Jin had instructed Dr. Chaudry "not to re-stitch Mr. Baez", in retaliation for having reported him to the State Health Department the day before. Dr. Chaudry then tells Mr. Baez, that his two inch open wound would have to "heal on its own", and

that it would take approximately (3) three weeks to "heal on its own". Which Mr. Baez, express to Dr. Chaudry, that would be impossible, and that a two inch open wound will never close and/or heal on its own, without stitches. But; Mr. Baez, was sent back to the prison and was never re-stitched, prolonging Mr. Baez' pain and sufferings even longer. [Doc. 148-1 Exhb.-A, T.A.C. ¶72-74]; [Doc. 23, dated Mar. 26, 2015 at ¶4]. The defendants attorneys alleges that, there is no indication exists that Dr. Jin **caused** that refusal. What a **coincidence** that a legal representative visits Dr. Jin for the refusal to have Mr. Baez re-stitched at the E.R. and the next day on Mar. 26, 2015, Baez is returned to see Dr. Chaudry. And their Urologist refuses to re-stitch Mr. Baez. These are genuine issues of material facts in dispute for a jury determination, not for Judge Lenihan. See [Doc. 148-4, ¶127].

Plaintiff objects and disputes the Court' and Defendants' ongoing attempts to obfuscate the facts and evidence in this case. When the Court stated that; Mr. Baez claims he submitted sick call request slips on Mar. 31, 2015, "to no avail". Yet, he saw Dr. Jin on Apr. 3, 2015, which Dr. Jin refused to examine Mr. Baez' wound. Including Mr. Baez' ongoing chronic skin lupus outbreaks to his lower back, buttocks, genitals and rapidly spreading badly to his anus area, causing bleeding and pain. For the record; Sick Call Medical Policy clearly states; If an inmate wishes to seek medical care, he must submit a sick call request slip, and the inmate <u>will</u> be seen the following day. This is an "MANDATORY MEDICAL POLICY IMPLEMENTED BY THE DOC", and not by Mr. Baez. The Court now alleges that just because Mr. Baez, submitted numerous more sick call slips, that he was allegedly seen by PA. Mattes, between Apr. 9th and Apr. 23, 2015. But; the Court nor the defendants state "what treatment did PA. Mattes provided" for Mr. Baez, and when. Mr. Baez does alleges that he was not treated nor examined by PA. Mattes, for his open bloody two inch wound, and/or skin lupus outbreaks, and chronic pain. [Doc.

33

148-1, Exhib-A T.A.C., ¶¶76-79]; [Doc. 148-4, ¶¶131-137].

Plaintiff objects and disputes the Court' and defendants' attempts to obfuscate the truth and evidence in this entire case. When the Court then states that; Mr. Baez, was sent to see Dr. Chaudry on Apr. 29, 2015, for a follow up. This visit, Dr. Chaudry examined Mr. Baez' wound, and stated to Mr. Baez; "Your wound will not heal on its own". And that He would re-schedule Mr. Baez for surgery to be re-stitched. Mr. Baez, then responded, I told you that it would be impossible for my wound to close/heal on its own. And now you tell me that, you will re-schedule me to be re-stitched at a later time. Then why didn't you just re-stitched me when I saw you on Mar. 26, 2015, and I thought you stated that Dr. Jin "waited too long to be re-stitched". Now, Mr. Baez became suspicious in believing that Dr. Jin had something to do with not being re-stitched. The delay resulted in various other medical complications, like rectal bleeding, due to the blisters, sores, rashes, ulcers, bumps, lesions, cracking of skin around Mr. Baez' anus, which caused excruciating pain and suffering. [Doc. 148-1 Exhib-A T.A.C. ¶78-81]; also see, [Doc. 148-1, Exhib-A T.A.C. ¶85-86]. It is true that on May 21, 2015, Dr. Jin examined Mr. Baez' bandages upon his returned from his surgery to be re-stitched, and given Mr. Baez pain meds. But, Dr. Jin did not honored Dr. Chaudry pain management prescriptions. And Dr. Jin did, discontinued Baez' pain meds, three days later, even though Mr. Baez was not receiving his pain meds at times. Mr. Baez, was forced to submit a sick call slip begging Dr. Jin to extend his pain meds for several more days, which he did on May 27, 2015. However; at this visit with PA. Mattes again refused to examine Mr. Baez' wound and skin outbreaks. [Doc. 148-1, Exhib-A T.A.C. ¶90-91].

Plaintiff objects and disputes the Court' and Defendants' ongoing attempt to obfuscate the events and evidence in this case, when it states that; on June 4,

2015 PA. Mwaura provided Mr. Baez with his lupus injection. Baez has never disputed this fact in his T.A.C. Again, Mr. Baez never disputed that he never received his injection on June 4, 2015 by PA. Mwaura. For the record, Mr. Baez' lupus injection is only provided **once a week,** and the defendants/Court failed to reveal this is for Mr. Baez' Rheumatoid Arthritis and it does not provide much relief, and the defendants' knows that this is why Plaintiff is always suffers from chronic pain so much. In addition; PA. Mwaura did not want to examine Mr. Baez open wound or injuries caused by the outbreaks, when Mr. Baez notified PA. Mwaura, that he felt a pop in his incision, and was bleeding. [Doc. 148-1, Exhib-A T.A.C. ¶96-98]. The Court then states that; on June 6, 2015 Mr. Baez was seen by PA. Mattes again. This is false. Mr. Baez stated that on June 7, 2015, Mr. Baez submitted a sick call slip in regards to his injuries when (3) more stitches came apart on June 4, 2015, and was bleeding and in pain. On June 8, 2015, PA. Mattes saw Mr. Baez, at his cell door for sick call. However; PA. Mattes stated the following; Mr. Baez I cannot pull you out from your cell to examine you, for the prison is on lock-down. And that I will see you tomorrow, is that okay ? Mr. Baez, then told her that he was bleeding, in pain, and could not sleep at night. But, PA. Mattes gave Mr. Baez no other choice, and Baez had to wait to the next day. Mr. Baez also noticed that his skin lupus outbreaks was getting worse and spreading out of control. However; at or about 1:00pm that very same day, PA. Mattes returned to L-B-Pod, because the prison was no longer on lock down. Mr. Baez, noticed PA. Mattes conducting sick call consults with other inmates on Mr. Baez' housing unit/pod. She even pulled inmate Mr. Maisonet out of his cell to check his "blood pressure". Mr. Baez' cell is directly across of Mr. Maisonet about 2 feet apart. But, PA. Mattes did not stop at Mr. Baez' cell to check Mr. Baez' stitches and his wound bleeding.  See [Doc. 148-8 Exhibit Grievance No.-4]. Mr. Baez grievance demonstrates PA. Mattes concern for Mr. Baez serious

medical needs, this was in retaliation for numerous of grievances and complaint filed against her by Mr. Baez, that she denied access to medical attention. These are genuine issues of material facts in dispute.

The Court is correct, that on June 10, 2015, Dr. Jin saw Mr. Baez in the triage room, but refused to examine Mr. Baez' bloody wound and or his injuries from the skin lupus outbreaks. On June 12, 2015, LPN King drops off a tube of Betamethasone cream. It was ordered by Dr. Jin, and as the Court stated that, it took Dr. Jin **(OVER 14 LONG EXCRUCIATING MONTHS LATER TO SEND MR. BAEZ THE CREAM, WHEN DR. JIN HAD PROMISED TO ORDER IT 'A VERY LONG TIME. DR. JIN WAITED UNTIL THE DAMAGE WAS DONE TO PRESCRIBE THE ONLY CREAM KNOWN TO PROVIDE SOME RELIEF FOR BAEZ SKIN OUTBREAKS).** This was done in retaliation for grievances, complaints, and lawsuits against him. There was a possibility that, if Dr. Jin/and or the other defendants would have just order the Betamethasone cream **prior** to July 2014, maybe Mr. Baez would have not needed two unsuccessful and painful surgeries, and suffered still today.

Plaintiff objects and disputes the Court' and defendants' ongoing attempts to obfuscate the truth, fact and evidence. When the Court now claims that, between June 19, 2015 and July 9, 2015, PA. Mwaura saw Mr. Baez "at his cell door". But; the Court never once stated what if any medical treatment was provided for Mr. Baez' serious ongoing medical needs. Judge Lenihan is just acting as the defendants' advocate and being partial/playing favoritism. Again on July 20, 2015, PA. Mwaura visited Mr. Baez at his cell door, in relations to six (6) sick call slips, which contains all of Mr. Baez' medical complaints, each slip stated only (1) one medical issue. The defendants failed to inform the Court that, Mr. Baez, was just following PA. Mwaura instruction to "WRITE DOWN ONLY ONE MEDICAL ISSUE PER SICK CALL SLIP, BECAUSE SHE WILL NOT ADDRESS ALL MR. BAEZ MEDICAL ISSUES ON ONE SLIP". PA. Mwaura still got up-set and became belligerent, and

36

refused to address each slip, and walked away. She was just angry that Mr. Baez filed countless of Grievances and Complaints against her. See [Doc. 148-10, Exhibit Grievance No-6] and [Doc. 148-11, Exhibit Grievance No.-7]. Mr. Baez has demonstrated throughout this motion that, he was not being treated every two weeks as Judge Lenihan and the defendants falsely claims here. Remember that it took Dr. Jin 14 long months just to give Mr. Baez a medication in their possession which was known to provide some relief, and forced Mr. Baez to undergo two unsuccessful excruciating surgeries and permanent skin injuries, scars and sufferings to this day. The defendants also permitting Mr. Baez to wallow like an animal in excruciating pain from several open bloody wounds from his stitches coming apart on three separate occasions, and refuse to send him to be re-stitched the following day when Baez reported to all the defendants, that (all but two stitches came apart), and let Baez suffer in that condition from March 12, 2015, until May 21, 2015, to be re-stitched. And the Defendants calls that medical treatment every two weeks. These are genuine issues of material facts in dispute. This Judge is totally a discriminator and has no respect for the law and oath she sworn to. The weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, **not** those of a judge.

Plaintiff objects and disputes the Court' and defendants' versions to obfuscate the facts and evidence in this case, when on July 22, 2015, Mr. Baez was sent to see the Urologist. Instead, Mr. Baez was seen by Dr. Cohen. Who acknowledged "a half inch open wound to Mr. Baez' penis", who requested photos of the wound and permitted. Mr. Baez then expressed concerns with pain, sensitivity, weakstream, urinating, spraying all over, a problem which continues today, and gone untreated. [Doc. 148-4 ¶37]. The Court attempts to address issues which involves non-defendants between the month of July and Aug of 2015, which requires no response. Yes; Mr. Baez was seen by PA. Mwaura on Aug. 27, 2015, for his

ongoing swelling to the left-side of his face/neck and ear. But; was not treated for this medical issue. PA. Mwaura also refused to examine Mr. Baez' open wound and/or skin lupus outbreaks injuries, and kicked Baez out the room. The Court then addresses the Sept 5, 2015 encounter, which relates to a non-defendant, and requires no response. [Doc. 148-1 Exhib-A, T.A.C. ¶124-125]. On Sept. 10, 2015, Mr. Baez was again seen by PA. Mwaura, who gave Baez his injection, and informed Mr. Baez, that she was not there to examine his open wound/or address any of his other serious chronic medical issues. Again Baez is seen, but not treated for his serious medical issues, these are a direct results for grievances/complaints filed against PA. Mwaura. These are genuine issues of material facts in dispute, that he is being seen/treated every two weeks.

Plaintiff avers that, the Court deliberately disregarded Mr. Baez' ongoing complaints that he is not being seen/or treated every two weeks as the defendants and Judge Lenihan seems to falsely claims. Where the Court failed to mention, that on Oct. 6, 2015 Mr. Baez submitted sick call slips to be seen for his ongoing chronic issues. And on Oct. 7, 2015 Dr. Jin saw Baez in the triage room, refused to examine Mr. Baez's ongoing complaints of skin outbreaks/open wound bleeding and pain. Dr. Jin' response was as follow; Mr. Baez, you have a lupus follow up appointment soon. You can address all your complaints to Dr. Hwang when you see him okay, and Dr. Jin literately kicked Mr. Baez out the room without examining his injuries. This is a direct and proximate results for grievances, family, attorneys complaints, Letters to the health department, and lawsuits against him. [Doc. 148-4 ¶145]; [Doc. 148-1 Exhib-A, T.A.C. ¶131]. The entire month of Oct. 2015 was the same, ignoring Mr. Baez' medical complaints. When Mr. Baez arrived at the Lupus Center on Oct. 14, 2015. Mr. Baez tried to address his ongoing skin outbreaks worsening, and causing bleeding to his anus, including his open wound complaints. Dr. Hwang refused to examine Mr. Baez' complaints and was

not treated. [Doc. 148-4 ¶146]. The Court also failed to mention that Between Oct. 15 through Oct. 22, 2015 Mr. Baez was denied medical by non-defendants. The Court also refused to mention that on Oct. 23, 2015, the New Medical Director Dr. Alpert gave Mr. Baez his injection. But; refused to examine Mr. Baez open wound and/or skin lupus outbreaks complaints. And it is also denied that, Mr. Baez was seen/treated on Oct. 30, 2015; Nov. 6, 12, 15, 18, 27, or 30, 2015. for the fact that "The defendants withheld Exhibits from Mr. Baez", and for those reasons ("No response is required"). [Doc. 148-4 ¶147]. The Court also refused to mention that the Defendants deliberately withheld even more medical records/exhibits from Mr. Baez, in order to defeat Baez in summary judgment. In support of Mr. Baez' claims, see; [Doc. 148-4 ¶¶147, 148, 149, 150, 151] These are genuine issues of material facts in dispute, and an attempt to defeat Baez at summary judgment. And due to Judge Lenihan and Defendants' engaged in Ex-parte Communications, permitted the defendants to get away with such a disgraceful ethical tactics.

Plaintiff objects and disputes the Court' and defendants' attempts to obfuscate the facts and distort the truth of the evidence. When the Court stated that; on May 29, 2016, Mr. Baez was experience several symptoms, including sores on his back, coughing, burning in his throat and swelling in his neck and throat. For the record, the Court is attempting to intentionally _minimizing_ the truth of the facts and events. When the Court failed to mention that on May 27, 2016, PA. Mwaura ordered Mr. Baez a new medication called ("RISEDRONATE"), for his Osteoporosis. The Court also failed to mention, was that, no one wanted to read nor educate Mr. Baez on the warning and dangers of this medication, ignoring his repeated requests to be educated. [Doc. 148-1 Exhib-A, T.A.C. ¶¶133-137]. On May 29, 2016, Mr. Baez began to noticed some strange sensations to his body. [Doc. 148-1 Exhib-A, T.A.C. ¶138]. By June 2, 2016, Mr. Baez did experience more

serious changes to his body and health. Consisting of a severe chronic dry
throat, scratchy throat, burning throat, difficulty breathing, shortness of
breath, uncontrollable dry chronic coughing, stomach pains, lung pains, swelling
to his neck, throat, tongue, gums, among other symptoms. Including, deep dark
purple blood spots covering his **entire** back, massive bloody blisters and
rashes/hive outbreaks. Mr. Baez' conditions were worsening to the point, where
Baez was unable to get out of bed and/or able to speak. On this same day of June
2, 2016, Mr. Baez saw PA. Mwaura in the triage room for his injection. Where PA.
Mwaura refused to examine Mr. Baez' serious medical conditions and side-effects
from the medication ("RISEDRONATE") PA. Mwaura ordered for him, and/or provide
answers to his questions, and kicked Baez out the room. [Doc. 148-1 Exhib-A,
T.A.C. ¶¶139-144].

Plaintiff objects and disputes the Court' and defendants' attempts to
obfuscate the facts and events of this case, when the Court continues to **act** as
the defendants' advocate, stating; From June 8, 2016 through June 21, 2016, Mr.
Baez was treated by other medical personnel not named in the T.A.C. For the
reasons as stated before by Mr. Baez, this does not requires a response, these
are non-defendants. The Court continues to state; Mr. Baez was complaining of
deep sharp piercing pain to the right side of his rib cage. And that this
treatment included x-rays which **"allegedly"** showed that he had no internal
injuries or broken/fractured ribs. [T.A.C., ECF No. 34 ¶¶145-153). Plaintiff
avers that, even though the "alleged" results of a non-defendant indicates
nothing was seen and/or any fractures. The truth of the matter is that, their
evaluation and results were **WRONG** for their were internal injuries to Baez' lungs
and (2) two fractured of the (8th & 9th ribs), there is "no dispute about Mr.
Baez' allegations and claims".

40

Plaintiff objects and disputes the Court' and defendants' distorted assertions and attempts to obfuscate the truth, facts and evidence in this case. The Court states that; on Dec. 1, 2016 Mr. Baez was **finally** transported to the Southwest Medical Regional Center Hospital. Yes; he was x-rayed and after hours of tests. Mr. Baez was then transported to another Facility at the Washington Hospital, where he was examined for the excruciating internal pain/injuries to the right-side of his ribcage and lungs complications as a direct and proximate results of the new medication ("RISEDRONATE") prescribed to Mr. Baez on May 27, 2016. There is **no doubt whatsoever** that, Mr. Baez sustained (2) two fractured ribs and serious painful lung complications as a results of the Risedronate. [Doc. 148-1 Exib-A, T.A.C. ¶¶154-165]. For the record; the Court and defendants engaged in Ex-parte Communications to deliberately denied and deprived Mr. Baez of the repeated requests for Discovery of medical documents, records, files, reports, results, outside hospital records, and was denied that right. [Doc. 148-4 ¶¶148-151]. And was denied the right to response to the defendants' lies and summary judgment allegations, to [Doc. 116 & 131]. Which was never provided to date. Mr. Baez avers that, Judge Lenihan was fully aware of this unprofessional and unethical violations, and simply assisted the defendants in their task to defeat Mr. Baez chances for a verdict for summary judgment in his favor. In support see [Doc. 148-4 ¶¶147-151] and did nothing to correct the violations, but **granted** the defendants with a verdict in their favor, for their unethical tactic's, practices, custom, and culture. Judge Lenihan can not be impartial and/or fair judge in any case that involves a prisoner with a capital case status. This case proves just that.

41

LEGAL FRAMEWORK

Rule 56, of the Federal Rules of Civil Procedure provides the summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c). Summary Judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "Secure the just, speedy and inexpensive determination of every action". Celotex Corp. V. Catrett, 477 U.S. 317, 327 (1986)(Citing Fed.R.CIV.P.1.

The party moving for summary judgment bears the burden of informing the Court of the basis for its motion and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact". Celotex, 477 U.S. at 323. The Court reviews the record by drawing all inferences in a light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(Citing United States V. Diebold, 369 U.S. 564 (1962).

Once the moving party carries its burden, "an adverse party's response... must set forth specific facts showing that there is a genuine issue for trial". Fed.R.CIV.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts". Matsushita, 475 U.S. at 586.

In short, summary judgment will be granted unless "a fair minded jury could return a verdict in favor of the [non-moving party] on the evidence presented". Anderson V. Liberty Lobby Inc., 477 U.S. 242, 252 (1986).

When there is no genuine issue of material fact, the court shall determine whether the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. To that end, the Court must review the responsive filing of the Pro Se' litigant

liberally. Estelle V. Gamble, 429 U.S. 97, 104-105 (1976).

RETALIATION

Retaliation for the exercise for a constitutionally protected activity is a violation of rights secured by the Constitution, and therefore cognizable under §1983. Rauser V. Horn, 341 F.3d 330 (3d Cir. 2001); White V. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). Merely alleging retaliation is insufficient to prevail on a claim of retaliation, instead a plaintiff bears the burden of satisfying three elements. First, a prisoner-plaintiff must prove that he engaged in a constitutionally protected activity. Rauser, 241 F.3d at 333. Second, a prisoner-plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of the prison officials". Id. (quoting Allah V. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). A prisoner satisfies this element by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights". Id. Third, a prisoner-plaintiff must prove that his constitutionally protected conduct was a substantial or motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333-34(adopting Mount Healthy Bd. of Educ. V. Doyle, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape V. Pennsylvania, 157 F.App'x 491, 498 (3d Cir. 2005)(citing Robinson V. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)("instructing that if 'timing alone' is the evidence adduced to establish the element of causation in a retaliation claim, the fact must be "'usually suggestive' of retaliatory motive")). More specifically, the curial third element of causation requires a plaintiff to prove either an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of

antagonism coupled with timing to establish a causal link. See <u>Lauren W. ex rel.</u> <u>Jean W. V. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007).

Once a plaintiff has made out a prima facie case, the burden shift to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably  related to penological interest". <u>Carter V. McGrady</u>, 292 F.3d 152, 158 (3d Cir. 2002)(internal quotation and citation omitted).

<u>NON-MEDICAL DEFENDANTS</u>

Plaintiff came forth with sufficient evidence to demonstrate a material fact in dispute. Initially, Plaintiff's verified complaint, that of which functions as an "affidavit", was never considered by the magistrate in review of the Defendants motion. <u>McCabe V. Prison Health Systems</u>, 117 F.Supp. 2d 443, 448 (fn-5)(E.D. Pa. 1997)("In Pro Se' cases, [the court] ordinarily construe[s] a Plaintiff's pleadings as affidavits for purposes of summary judgment motions"); <u>Citing</u>, <u>Reese V. Sparks</u>, 760 F.2d 64, 67 (n.3) (3d Cir. 1985). The Magistrate erroneously concluded that Plaintiff failed to demonstrate: 1) an adverse action by the non-medical Defendants, but also 2) that the non-medical Defendants actions were motivated by Plaintiff's constitutionally protected activity; (Doc.-152, at ¶20).

Clearly the magistrate misapprehended the Plaintiff's claim at (Doc.-152, at ¶21), as Plaintiff clearly established the non-medical Defendants; Namely, Lt. George, Sgt. Harouse, CO. Brown and CO. Derry, intentionally procrastinated in their responses to, 1) contacting the medical department, and 2) their responses to Plaintiff's emergent situation, that of which a layperson would have known required immediate medical attention, as Plaintiff was internally hemorrhaging as evidenced by a catheter bag filling with blood. See, (Doc. 148-1, Exhibit-A, at ¶¶174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185);

Estelle V. Gamble, 429 U.S. at 105; This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

Plaintiff further established that the retaliation was the direct or proximate motivating factor of Plaintiff's constitutionally protected conduct by producing the very grievances which Plaintiff filed against the above named Defendants; See, (Exhibits; 1) Grievance No#. 653082 dated 11/18/16; 2) Grievance No#. 653684, dated 11/25/16); (Doc. 148-1 Exhib-A TAC ¶¶ 34, 35, 36). If said evidence was insufficient, than its insufficiency is attributed to the magistrate refusal to comply with Fed.R.Civ.P. 56(e), which would have stymied the entry of judgment until the Defendants produced the very evidence the magistrate opined was not produced, and that of which Plaintiff requested, and was in the Defendants exclusive control - that being the grievances Plaintiff filed against the Defendants prior to the incident; See (Doc. 60, 65, 66, 84, 91, & 93); Moreover, the Defendants actual motivations were subjective. Accord; Goldfinger V. Boron Oil Company, 375 F.Supp. 400, 412 (n.12)(W.D.Pa. 1974)("[S]ummary Judgment is inappropriate where motive and intent are important or where credibility is a factor"). In short, the Defendants may deny the nexus to the protected activity, but credibility is an exclusive function of the jury.

As to Defendant King and Frazer, the Magistrate at (Doc. 152, pp.21), digresses to the medical records which purportedly lack evidence of improper care. However, those are their records - designed, compiled and made to say whatever is advantageous to their performance in prison setting scrutinized by nobody. The records have no credibility in this matter as they can say they did a

lot of things which were never done and as disputed in; (Doc. 152, at pp.21). See, Third Amended Complaint, [Doc. 148-1 Exhibit-A, LPN King; ¶¶164, 165, 166, 167, 168, 169, 170, 171, 172, 173] and [Doc. 148-1, Exhibit-A, RN Frazer; 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195]. Moreover, the Court even recognizes that it was not until "later that evening [Frazer] called EMS." Estelle V. Gamble, 429 U.S. at 105. Plaintiff averments as cited in the amended complaint create a material fact in dispute.

The magistrate at (Doc. 152, pp. 22), remarkably challenges Plaintiff's demonstration of "an adverse action sufficient to deter a person of ordinary firmness from exercising a personal constitutional right". The mere fact these Defendants (collectively), nearly caused Plaintiff's death exceeds the showing. See, (Doc. 148-1, Exhibit-A, T.A.C. at ¶¶186, 187, 188, 189, 190, 191, 192, 193, 194, 195]. The court must reviews the record by drawing all inferences in a light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986)((Citing United States V. Diebold, 369 U.S. 564 (1962).

2.   VALLEY

The Court at (Doc. 152 at pp. 26) embellishes the medical treatment Plaintiff "allegedly" received, during the times in question. The Court does this to avert the inadequacy of the medical treatment as painted out in Plaintiff's response, and that of which was the direct and proximate result of the retaliation. In short, the alleged medical attention received before during and after the incident, was so inadequate it was intended to cause Plaintiff pain and suffering in retaliation, for Plaintiff's Exercising His First Amendment rights. See, Janus V. AFSCME, Counsel, 585 U.S. _____, 201 L.Ed. 2d. 924, 938-939, 2018 U.S. LEXIS 4028 (2018). Here, the medical treatment the Court boosts about, was at all times

relevant so far in between and so inadequate, the Defendants knew would result in Plaintiff lingering in pain. [Doc. 148-1, Exhibit-A, T.A.C. ¶¶133 through 195]; Also see, Attached Exhibit(s) Grievance No#. 636526 dated 8/2/16; Grievance No.# 637534 dated 8/8/16; Grievance No.# 642627 dated 9/13/16; Grievance No.# 646919; Also see, [Doc. 148-4,  #5 Exhibit Grievance 1; #6 Exhibit Grievance 2; #7 Exhibit Grievance 3; #8 Exhibit Grievance 4; #9 Exhibit Grievance 5; #10 Exhibit Grievance 6; #11 Exhibit Grievance 7; #12 Exhibit Grievance 8; #13 Exhibit Grievance 9; #14 Exhibit Grievance 10; #15 Exhibit Grievance 11; #16 Exhibit Grievance 12; #17 Exhibit Grievance 13; #18 Exhibit Grievance 14; #19 Exhibit Grievance 15; #20 Exhibit Grievance 16; #21 Exhibit Grievance 17; #22 Exhibit Grievance 18; #23 Exhibit Grievance 19; #24 Exhibit Grievance 20; #25 Exhibit Grievance 21. Estelle V. Gamble, 429 U.S. at 105; Rauser V. Horn, 341 F.3d at 330; West V. Keve, 519 F.2d 158, 161 (3d Cir. 1978); Monmouth County Corr. Inst. Inmates V. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) cert. denied 486 U.S. 1006 (1988) The United States Court of Appeals For The Third Circuit has also recognized that if "unnecessary wanton infliction of pain',...results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment". Atkison V. Taylor, 316 F.3d 257, 266 (3d Cir. 2003)(quoting Lanzaro, 834 F.2d at 347)); Farmer V. Brennan, 511 U.S. 825, 842 (1994); Also deliberate indifference may be manifest in a variety of ways. Durmer V. O'Carroll, 991 F.2s 64, 68 (3d Cir. 1993) Durmer remarked that "deliberate indifference could exist in a variety of different circumstances", including where "knowledge of the need for medical care [is accompained by the] ... intentional refusal to provide that care", or where, short of absolute denial & necessary medical treatment [i]s ... delayed for non-medical reasons", or "prison authorities prevent an inmate from receiving

recommended treatment". Id., 991 F.2d at 68. (internal quotation marked omitted)(quoting Lanzaro, 834 F.2d at 346); Spruill V. Gills, 372 F.3d 218, 235 (3d Cir. 2004). And Id. at 235 (numerous citations and internal quotations marked omitted). The Court of Appeals For The Third Circuit also found that "prison officials who continues **a course of treatment they know is painful, ineffective or entails a substantial risk of serious harm act with deliberate indifference**". See Rouse V. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); White V. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990); Reed V. Cameron, 380 Fed. App'x 160, 162 (3d Cir. 2010)(quoting Lanzaro, 834 F.2d at 347) and Szemple V. Univ. Medical & Dental of New Jersey, 451 F.Appx 187, 191 (3d Cir. 2011).

Plaintiff avers that, the Court's failure and refusal to compel other evidence/grievances, etc. Pursuant to Fed.R.Civ.P. 56(e) If said evidence was insufficient, than its insufficiency is **attributed** to the Magistrates refusal to comply with Fed.R.Civ.P. 56(e), which would have stymied the entry of judgment until the Defendants produced the very evidence the Magistrate **opined** was not produced, and that of which Plaintiff requested, and was in the Defendants' exclusive control - that being the grievances Plaintiff filed against the Defendants **prior** to the incident; [Doc. 60, 65, 66, 84, 91, 93), also see (Exhibits; Grievance No#. 653082 dated 11/18/16; Grievance No#. 653684 dated 11/25/16) and [Doc. 148-1 Exhibit-A, T.A.C. ¶¶ 34, 35, 36). Moreover, the Defendants actual motivations were subjective. Accord, Goldfinger V. Boron Oil Company, 375 F.Supp. 400, 412 (n.12)(W.D.Pa. 1974)("[S]ummary Judgment is inappropriate where motive and intent are important or where credibility is a factor"). In short, the Defendants may deny the nexus to the protected activity, but credibility is an exclusive function of the jury.

The Court at [Doc. 152 at 25], alleges Plaintiff failure to demonstrate a pattern of antagonism. Plaintiff response is he did repeatedly by **attaching** the

dozens of Grievances the Medical Defendants alleges in their Motion For Summary Judgment 116 claiming that; "BAEZ DID NOT FILE **ANY** GRIEVANCE WHILE AT SCI-GREENE **FROM** MARCH 2014 TO MARCH 2017 ALLEGING THAT HE WAS BEING **RETALIATED** AGAINST BY **ANY** OF THE MEDICAL DEFENDANTS. THERE ARE **NO GRIEVANCES BASED ON RETALIATION AGAINST ANYONE.** BAEZ HAS **NOT PRODUCED ANY GRIEVANCES ON THE ISSUE OF RETALIATION"**. See [Doc. 116-1, C. at p.6]. Also see, [Doc. 148-4 Exhibits Grievances; #5 Exhibit Grievance No-1 through 148-4 No.25# Exhibit Grievance No.-21]. These are genuine issue of material facts in dispute. Also see; Attached Grievances No#. 653082; No#. 653087; No#. 653684; No#. 628834; No#.657699; No#. 656824; No#. 636526; No#. 637534; No#. 642627; No#. 646919; No#.543768; No#. 658825. Also see; Legal Complaint Letter by Plaintiff to the Department of State & Office of Chief Counsel, dated Feb. 9, 2015, against Defendants and Non-Defendants; and Legal Document dated Feb. 9, 2015, from the Commonwealth of Pennsylvania Office of General Counsel of Professional Compliance, in regards to Defendants and Non-Defendants; These are Grievances and Documents of the intentional and malicious, and wanton disregard for Plaintiff's medical needs. Rauser V. Horn, 341 F.3d at 333. Also see attached; PLAINTIFF'S EXHIBITS DEPICTING GAPS AND TREATMENT DUE TO RETALIATION DOCUMENT.

Plaintiff avers that, upon the review of Defendant LPN Louis King's "Sworn Declaration" dated April 25, 2019 are in clear contradiction with Judge Lenihan boosted claims and the Medical Defendants false allegations of LPN King's actions on Nov. 17, 2016. Plaintiff, compared everything the Court, Medical Defendants, RN Tate Progress Notes and their Attorneys claims to LPN King' Sworn Declaration. For the record; "Nowhere at all does LPN King, does he _ever_ once claims, states and/or mentions in his Declaration, as he falsely claimed in all his _other_ responses, to what occurred on Nov. 17, 2016, when "He" **not** RN Tate, inserted the catheter incorrectly, which was the direct and proximate results and cause of Plaintiff's hemorrhaging and internal bleeding. Nowhere does King states that; "THAT THIS IS THE NUMBING AGENT USED TO ALLEVIATE SOME OF THE PAIN ASSOCIATED WITH THE INSERTION". BUT, HIS SWORN DECLARATION DATED APRIL 25, 2019 NOW CLAIMS: HE USED A LUBRICATE JELLY PROVIDED IN THE KIT TO MAKE INSERTION EASIER AND LESS UNCOMFORTABLE FOR THE INMATE BAEZ. IN ADDITION, LPN KING NEVER ONCE STATES NOR MENTIONS: "UPON INSERTION, LPN KING FILLED THE CATHETER WITH 30cc OF NORMAL SALINE SOLUTION AND NOTED A SMALL BLOOD RETURN WHICH CLEARED UP ALMOST IMMEDIATELY WITH CLEAR YELLOW URINE. It's clear that LPN King's multiple versions, does not corroborate nor supports, what he stated in the medical Progress Note by RN Tate dated Nov. 17, 2016, Grievance Responses to Grievance No.# 653087, Especially Not Judge Lenihan's Report and Recommendations at [Doc. 152, at p. 2]. This is a vital and important genuine issue of a material fact in dispute, because it demonstrates LPN King, the Defendants, Medical Department are conspiring to cover-up for King's incompetence and malfeasances, and the Court Judge Lenihan was happy to "support such false information and claims".

The Court refuses to acknowledge that absent a **prior** grievance, Plaintiff Exercising of his First Amendment rights **"Extends Outside The Filing of a Grievance"**, but, also Plaintiff's chastising these defendants during all or most

consultations, as here Plaintiff expressed his frustrations with their performance and inadequacy care, thus causing these defendants to dislike and sometimes treat Plaintiff as a nuisance and not as a patient, and even curse out Plaintiff repeatedly. Hughes V. Joilet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Plaintiff at times would have to "Grind about his medical complaints to the defendants, each time they come to Plaintiff's cell door". By stating words to the effects; "That Dr. Jin, Dr. Park, Dr. Dascani, PA. Mattes, PA. Mwaura, and so on would deliberately ignore my complaints that the Hydrocortisone and Articort cream causes my skin to burn, irritate, open up my sore, lesions, ulcer, crack my skin open, bleeding, peeling my skin, exacerbate my lupus, and all of you continue to re-order in retaliation more and more of the same cream. You walk away from me when I try to address my medical complaints, you show up to my door and ignore my complaints, you unlawfully give me an ultimatum of only one medical issue per sick call slip/consult in violation of medical policy, how your course of treatment is making my skin outbreaks worse, how I am refused numerous times for months to be re-stitched, how I am denied examination when I sign up for sick call that I am bleeding from my incision and kicked out the room without being even examined, and all the delays and late treatment by the specialists, and follow up visits being sent late or not at all, and how all of you almost killed me on (3) three separate occasions, due to your incompetence and deliberate retaliatory acts, etc." Plaintiff avers that, due to Plaintiff invoking his First Amendment right to Freedom of Speech, resulted in the ("Cross Influence") to all the **other** defendants and medical staffs. Hughes V. Joilet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991); Rauser V. Horn, 341 F.3d at 333 and Estelle V. Gamble, 429 U.S. 97, at 105. Plaintiff avers that, grievances are not the only Method to express a First Amendment Constitutional Rights. Janus V. AFSCME, Counsel, 585 U.S. _____, 201 L.Ed.2d. 924, 938-939, 2018 U.S. LEXIS 4028 (2018).

**WHEREFORE:** Plaintiff, Orlando Baez, respectfully requests th at this Honorable District Court, take under serious consideration Plaintiff's Pro se' Complaint and review the record by drawing all inferences in a light most favorable to the party opposing the motion. To that end, respectfully request that the Court to review the responsive filing of a litigant liberally. And Reverse the Honorable Magistrate Judge Lisa Pupo Lenihan's Report and Recommendations, and Grant Plaintiff Summary Judgment in his Favor.

## P R A Y E R

"FOR HE SHALL FOREVER PRAY FOR JUSTICE AND DUE PROCESS OF LAW"

Date: 2/17/, 2020

Respectfully Submitted:

Plaintiff/Pro se'
Mr. Orlando Baez, ID# CB/3721
SCI Phoenix Prison
1200 Mokychic Drive.
Collegeville, PA. 19426

cc

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

ORLANDO BAEZ,                          :        CASE NO#. 2:-17-01375
           Plaintiff,
     Vs.                               :

                                                CIVIL ACTION

BYUNGHAK JIN, MD: et al.,              :
           Defendants.
                                       :        RETALIATION

                                       :

<u>CERTIFICATE OF SERVICE</u>

   I, Orlando Baez, Plaintiff, hereby certify that I am on this day serving a true and correct copy of the foregoing document PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE LISA PUPO LENIHAN, upon the parties indicated below, in the manner of First Class Mail Service.

SERVICE Via FIRST CLASS MAIL:

1) In The United States District Court For The
Western District of Pennsylvania
U.S. POSTOFFICE & COURTHOUSE
700 GRANT STREET.
PITTSBURGH, PA. 15219

2.) Alan S. Gold, Esq:
Gold & Ferrante, PC.
716 N. Bethlehem Pike, Suite-208#
Lower Gwynedd, PA. 19002

3) Maria G. Macus, Esq; Assist Counsel;
Pa. Dept. of Corr.
1920 Technology Parkway.
Mechanicsburg, PA. 17050

4.) Attorney General Office
1251 WaterFront Place. Mezzmine Level
Pitts, PA. 15222

                              Respectfully Submitted:

Date: 2/17/, 2020
                              Plaintiff/Pro se
                              Mr. Orlando Baez, ID# CB/3721
                              SCI Phoenix Prison
                              1200 Mokychic Drive
                              Collegeville, PA. 19426

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

ORLANDO BAEZ,                          :        CASE NO#. 2:-17-01375
            Plaintiff,
      Vs.                              :

                                                CIVIL ACTION
BYUNGHAK JIN, MD: et al.,              :
            Defendants.
                                                RETALIATION
                                       :

                                       :

<u>VERIFICATION DECLARATION</u>

    I, Orlando Baez, Plaintiff, have read the foregoing document and hereby verify
that the matters alleged therein are true, except as to those matters alleged on
information and belief, and, as to those, I believe to be true. I certify under
the penalty of perjury, that the foregoing is true and correct pursuant to 28
U.S.C. ¶1746 and 18 Pa. C.S.A. §4904.

Dated: _2/17_ , 2020

cc;

                              Respectfully Submitted:

                              Plaintiff/Pro se
                              Mr. Orlando Baez, ID# CB/.3721
                              SCI Phoenix
                              1200 Mokychic Drive
                              Collegeville, PA. 19426

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

ORLANDO BAEZ,                          :        CASE NO#. 2:-17-01375
        Plaintiff,
    Vs.                                :
                                                CIVIL ACTION
BYUNGHAK JIN, MD: et al.,
        Defendants.                    :
                                                RETALIATION
                                       :

## CERTIFICATION STATEMENT

   I, Orlando Baez, Plaintiff, have read the foregoing documents and hereby
verify that the matters alleged herein are true, except to hose matters alleged
in information and belief, and, as to those matters I believe to be true. I
certify under the penalty of perjury that the foregoing is true and correct
pursuant to 18 Pa. C.S. §4904.

Dated: 2/17/ , 2020
cc

Respectfully Submitted:

Plaintiff/Pro se
Mr. Orland Baez, ID# CB/3721
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA. 19426